IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:21CV840 |
| WOLFSPEED, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Wolfspeed, Inc. (Doc. 21.) Defendant seeks to dismiss Plaintiff The Trustees of Purdue University's allegations of willful infringement, enhanced damages, and induced infringement. (Id.) Additionally, Defendant has filed a motion to seal regarding an exhibit attached to its motion to dismiss. (Doc. 23.) For the reasons that follow, this court will grant Defendant's motion to seal, (id.), and deny Defendant's motion to dismiss, (Doc. 21).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

   A.    **Factual Background**

For purposes of a motion to dismiss, a court must "accept as true all of the factual allegations contained in the

complaint," Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)), however, this court is not bound to accept legal conclusions as a factual allegation, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff "is a statutory body corporate . . . charged by Indiana law with the responsibility for operating Purdue University." (First. Am. Compl. for Patent Infringement ("FAC") (Doc. 20) ¶ 1.)[1] Defendant is a company that "makes and sells various silicon carbide metal oxide semiconductor field effect transistors (SiC MOSFETs)." (Id. ¶¶ 6-7.)

Plaintiff owns two patents: U.S. Patent No. 7,498,633 ("'633 Patent") and U.S. Patent No. 8,035,112 ("'112 Patent") (together, "Asserted Patents"). (Id. ¶ 1.) "The '633 Patent relates generally to semiconductor devices . . . for high-voltage power applications." (Id. ¶ 15.) "The '112 Patent relates generally to semiconductor field effect transistors . . . having self-aligned source contacts." (Id. ¶ 23.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

### 1. **Alleged Infringement of the ʼ633 Patent**

Plaintiff alleges certain SiC MOFSETs of Defendant ("Accused Products") infringe one or more claims, including claim 9, of the ʼ633 Patent. (Id. ¶¶ 31–45.) Defendant "has been aware of the ʼ633 Patent and its coverage of SiC MOFSETS since as early as December 18, 2014." (Id. ¶ 38.) On that date, the United States Patent and Trademark Office ("USPTO") notified Defendant of the ʼ633 Patent in connection with the prosecution of one of Defendant's patent applications. (Id.) The ʼ633 Patent was also cited during the patent prosecution of several of Defendant's patents. (Id.)

In addition to learning about the ʼ633 Patent during patent prosecution, in April 2021 Plaintiff sent Defendant a notice letter. (Id. ¶ 39.) On June 25, 2021, Plaintiff gave Defendant "claim charts that detailed Wolfspeed's infringement of the ʼ633 Patent." (Id. ¶ 40; Ex. C ("ʼ633 Claim Chart") (Doc. 20-3).) Purdue provided Wolfspeed with updated claim charts on August 4, 2021. (FAC (Doc. 20) ¶ 41.) At a meeting on August 12, 2021, Plaintiff presented the updated claim charts to Defendant. (Id. ¶ 42.)

Despite knowing about the ʼ633 Patent and its coverage of the Accused Products, Defendant continues to create and disseminate the Accused Products as well as manuals,

-3-

promotional, technical, and marketing materials to end users "by encouraging others to infringe the '633 Patent with the specific intent to induce such infringement." (Id. ¶ 43.) Defendant also "directs customers to purchase the Accused Products from various distributors on its website." (Id.)

### 2. Alleged Infringement of '112 Patent

Plaintiff also alleges the Accused Products infringe one or more of the claims of the '112 Patent, including claim 6. (Id. ¶¶ 46–47.) Defendant "has been aware of the '112 Patent and its coverage of SiC MOSFETs since as early as July 19, 2012, when the USPTO expressly notified [Defendant] of the '112 Patent in connection with the prosecution of" one of Defendant's patent applications. (Id. ¶ 52.) The '112 Patent was also cited during the patent prosecution of five of Defendant's patents. (Id.)

Like with the '633 Patent, Plaintiff provided Defendant claim charts detailing Defendant's infringement of the '112 Patent. (Id. ¶¶ 53–55; Ex. D ("'112 Claim Chart") (Doc. 20-4).) Despite knowing about the '112 Patent and its coverage of SiC MOFSETs, including the Accused Products, Defendant continues to create and disseminate the Accused Products as well as manuals and promotional, technical, and marketing materials to end users by "encouraging others to infringe the '112 Patent with the

-4-

specific intent to induce such infringement." (FAC (Doc. 20)
¶ 56.)

**B.  Procedural Background**

Plaintiff filed its Complaint on October 28, 2021.
(Original Compl. for Patent Infringement (Doc. 1).) Plaintiff
amended its Complaint on January 18, 2022. (FAC (Doc. 20).)
Defendant moved to dismiss the allegations of willful
infringement, enhanced damages, and induced infringement,
(Doc. 21), and filed a brief in support, (Mem. in Supp. of
Wolfspeed's Partial Mot. to Dismiss ("Def.'s Br.") (Doc. 22)).
Plaintiff responded, (Pl.'s Br. in Opp'n to Def.'s Partial Mot.
to Dismiss ("Pl.'s Resp.") (Doc. 28)), and Defendant replied,
(Wolfspeed's Reply to Purdue's Opp'n to Wolfspeed's Partial Mot.
to Dismiss ("Def.'s Reply") (Doc. 30)).

**II.  MOTION TO SEAL**

Before addressing the merits of Defendant's motion to
dismiss, this court will first address Defendant's motion to
seal, (Doc. 23). The underlying document that Defendant seeks to
seal is a Mutual Confidentiality Agreement and Limited Mutual
Covenant Not to Sue ("NDA") entered into by the parties. (See
id.; see also Def.'s Br. (Doc. 22) at 8.) Defendant asserts
sealing the exhibit and redacting the portions of its brief

-5-

referencing that exhibit are necessary to protect Defendant's confidential business information. (See Doc. 23.)

**A.** **Legal Standard**

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013).

For those records and documents that are judicial in nature, "[t]he right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004). The distinction between the rights afforded by these two sources is significant because "the common law does not provide as much access to the press and public as does the First Amendment." In re State-Record Co., 917 F.2d 124, 127 (4th Cir. 1990). "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and

-6-

documents." <u>Stone v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 180 (4th Cir. 1988) (internal quotation marks and citation omitted).

"The common law presumes a right to inspect and copy judicial records and documents." <u>Id.</u> "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." <u>Rushford v. New Yorker Magazine, Inc.</u>, 846 F.2d 249, 253 (4th Cir. 1988). However, as described in <u>In re Application of United States</u>, the regularly cited cases in this area all rely on <u>Nixon</u> and each "use a 'heavily outweigh' standard. . . . Moreover, <u>Rushford</u> subsequently states: 'The party seeking to overcome the presumption bears the burden of showing some significant interest that <u>outweighs</u> the presumption.'" <u>In re Application</u>, 707 F.3d at 293 n.12 (quoting <u>Rushford</u>, 846 F.2d at 253).

The following are among the factors to be weighed in the common-law balancing test: "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." <u>In re Knight Publ'g Co.</u>, 743 F.2d 231, 235 (4th Cir. 1984).

-7-

Unlike the common-law right of access, "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone, 855 F.2d at 180. "When the First Amendment provides a right of access, a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Va. Dep't of State Police, 386 F.3d at 575 (internal quotation marks omitted) (quoting Stone, 855 F.2d at 180). The Fourth Circuit has held that the First Amendment grants access to "documents filed in connection with plea hearings and sentencing hearings in criminal cases" as well as "documents filed in connection with a summary judgment motion in a civil case." Rushford, 846 F.2d at 253. "In deciding whether the First Amendment right of access extends to a particular kind of hearing, both the Supreme Court and the courts of appeals have looked to two factors: historical tradition and the function of public access in serving important public purposes." In re Wash. Post Co., 807 F.2d 383, 389 (4th Cir. 1986). "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons," as opposed to conclusory assertions, in support of restricting access. Va. Dep't of State Police, 386 F.3d at 575.

Under both the common law and First Amendment jurisprudence, "the right of access to judicial records and documents may be abrogated only in unusual circumstances." Stone, 855 F.2d at 182. A district court "must determine the source of the right of access with respect to each document" that is the subject of a motion to seal. Id. at 181. "Only then can it accurately weigh the competing interests at stake." Id. After determining whether the right of access arises under the common law or the First Amendment, the district court

> must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

Va. Dep't of State Police, 386 F.3d at 576. Although in Virginia Department of State Police, the Fourth Circuit was dealing with disclosure of issues that originally arose in relation to a criminal investigation which resulted in an arrest and murder, the Fourth Circuit has made clear those same procedural requirements apply to judicial records in a civil case:

> the district court must follow the procedural requirements as laid out in In re Knight Publishing Co., 743 F.2d 231 (4th Cir. 1984). First, the district court must give the public adequate notice that the sealing of documents may be ordered. Second, the district court must provide interested persons "an opportunity to object to the request before the court

-9-

> ma[kes] its decision." Third, if the district court
> decides to close a hearing or seal documents, "it must
> state its reasons on the record, supported by specific
> findings." Finally, the court must state its reasons
> for rejecting alternatives to closure.

Rushford, 846 F.2d at 253-54 (internal citation omitted)

(quoting In re Knight Publ'g Co., 743 F.3d at 234-35).

"[I]n some civil cases the public interest in access . . .
may be as strong as, or stronger than, in most criminal cases."
Gannett Co. v. DePasquale, 443 U.S. 368, 386 n.15 (1979).
Furthermore, "the mere fact that a document was subject to a
blanket protective order does not relieve the parties or a court
of the obligation to comply with the Fourth Circuit's otherwise
applicable sealing regimen." Colony Ins. Co. v. Peterson,
No. 1:10CV581, 2012 WL 1047089, at *2 (M.D.N.C. Mar. 28, 2012)
(collecting cases).

Local Rule 5.4 dictates how parties shall file documents
under seal. Under that rule, a party filing documents under seal
must either claim confidentiality itself or file a motion to
seal but not claim confidentiality. See LR 5.4(c). If the party
filing the documents under seal does not claim confidentiality,
the party claiming confidentiality has fourteen days to file a
brief supporting the motion to seal in accordance with Local
Rule 5.4(c). Id.

### B.   **Procedural Safeguards**

As discussed above, this court is required to follow certain procedural safeguards, including adequate public notice, that the sealing of documents may be ordered and an opportunity for interested persons to object to the request for sealing before the court makes its decision. See Va. Dep't of State Police, 386 F.3d at 576. Here, "the motion[] w[as] filed on the public docket and ha[s] been pending for several months, satisfying this court's duty to give the public notice and an opportunity to respond." RF Micro Devices, Inc. v. Xiang, 1:12CV967, 2016 WL 6768936, at *3 (M.D.N.C. July 25, 2016). Plaintiff has filed an objection to the motion. (Doc. 27.) Accordingly, this court finds there has been adequate public notice and interested parties have had a reasonable opportunity to object to the requested sealing and/or redaction.

C. **Discussion**

The Fourth Circuit reasoned in an unpublished decision that "documents filed in connection with a motion to dismiss and excluded by the court" do not "constitute 'judicial documents' subject to the common law presumption of access." In re Policy Mgmt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. 1995) (table). The common law presumption of access does not attach to those documents because those documents "d[o] not play any role in the district court's adjudication of the motion to

-11-

dismiss." Id. (reversing the district court's order to unseal documents when the district judge had not considered the documents in adjudicating the motion to dismiss).

As will be more fully explained infra Section III.B.1, this court declines to consider the sealed exhibit in adjudicating the motion to dismiss. Because that exhibit plays no role in this court's adjudication of Defendant's partial motion to dismiss, the common law presumption does not attach to that exhibit, and the exhibit, (Doc. 24-4), may remain under seal, see In re Policy Mgmt. Sys., 1995 WL 541623, at *4.

Turning to Defendant's redacted brief, this court finds that brief is a judicial record because it was filed with the objective of seeking judicial action, and the question of whether to dismiss an action affects the parties' substantive rights. See In re Application, 707 F.3d at 290. There does not, however, appear to be a First Amendment right of access to Defendant's brief. See In re Policy Management Sys., 1995 WL 541623, at *3 ("[T]he First Amendment guarantee of access should not be extended to documents filed in connection with a motion to dismiss."). Since the common law right of access attaches to the documents, this court must determine whether Defendant has overcome the presumption of access. "To substantively overcome the common law presumption of access . . ., a court must find

-12-

that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." In re Application, 707 F.3d at 293 (quoting Under Seal v. Under Seal, 326 F.3d 479, 486 (4th Cir. 2003)). The burden of establishing such a countervailing interest is on the party seeking to keep the material secret. Rushford, 846 F.2d at 253.

Defendant contends that the redacted language would give the public insight into Defendant's "confidential business information not otherwise known to the public." (Doc. 29 at 2.) Defendant's representation to this court that the materials sought to be sealed contain confidential business information can be considered as some evidence to support a finding that the materials constitute confidential business information. See Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 730 (M.D.N.C. 2013). Like the analysis of the motion to seal by the district court in Bayer Cropscience Inc. v. Syngenta Crop Protection, LLC,

> The pending motion[] [is] primarily directed towards keeping confidential certain [business] and licensing information which is not ordinarily public. See Nixon, 435 U.S. at 598, 98 S. Ct. 1306. The competitive and financial interest of the parties would be harmed by public disclosure. There is no evidence that the parties are seeking to protect this information for any improper purpose.

979 F. Supp. 2d 653, 656–57 (M.D.N.C. 2013). Similarly, in this case the business interests at stake would be harmed by public

-13-

disclosure, and there is no evidence to suggest that protection of this information is sought for an improper purpose.

This court finds Defendant's brief in support of its motion to dismiss, (Def.'s Br. (Doc. 22)), is appropriately redacted. Defendant's unredacted brief, (Doc. 24), may remain under seal. For the foregoing reasons, Defendant's motion to seal, (Doc. 23), will be granted.

## III. <u>MOTION TO DISMISS</u>

### A. <u>Standard of Review</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Id.</u> Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp.

-14-

2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B. <u>Analysis</u>**

### 1. <u>Consideration of NDA</u>

Courts can properly consider documents that are "integral to and explicitly relied on in the complaint" when ruling on a motion to dismiss. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Defendant argues the NDA is integral and explicitly relied on in the First Amended Complaint because "Purdue's willfulness allegations explicitly and indisputably refer to communications that took place after the parties entered into the NDA." (Def.'s Reply (Doc. 30) at 10.) Therefore, Defendant argues this court must consider the NDA to determine whether Plaintiff's willfulness allegations are properly pleaded. (Id.)

On the contrary, this court finds the NDA is neither integral to nor explicitly relied on in the First Amended Complaint. Defendant provides no citation to where in the First Amended Complaint Plaintiff has made the NDA integral to the allegations. (See id.) Nor does Defendant provide a citation to where Plaintiff has explicitly relied on the NDA. (See id.) Upon

-15-

careful review of the First Amended Complaint, this court finds
no mention of _any_ agreement between the parties concerning
disclosure of confidential information. Therefore, this court
declines to consider the NDA in determining whether Plaintiff
has plausibly pled allegations of willful and induced
infringement.

Additionally, this court notes a separate reason it will
not consider the NDA at this stage in the proceedings. "'The
purpose of Rule 12(b)(6) is to test the sufficiency of a
complaint' and not to 'resolve contests surrounding the facts,
the merits of a claim, or the applicability of defenses.'"
Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir.
2006) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243
(4th Cir. 1999)). Here, the parties dispute the meaning of the
language in the NDA. (Compare Pl.'s Resp. (Doc. 28) at 3-4, with
Def.'s Reply (Doc. 30) at 8-9.) Because there is a factual
dispute about the meaning of certain terms of the NDA and
whether Plaintiff violated those terms, this court declines to
make any findings at this juncture about the relevance and
effect, if any, the NDA has on Plaintiff's claims.

### 2. Willful Infringement and Enhanced Damages

Plaintiff alleges that Defendant's infringement in this
case has been willful such that enhanced damages may apply. (FAC

-16-

(Doc. 20) ¶¶ 44, 57.) There are two elements to willful infringement: (1) the accused infringer must know of the asserted patents; and (2) the accused infringer must have "had a specific intent to infringe at the time of the challenged conduct." Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 987 (Fed. Cir. 2021) (citing Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 105–06 (2016)); OptoLum, Inc. v. Cree, Inc., 1:17CV687, 2021 WL 5505794, at *2 (M.D.N.C. Nov. 24, 2021) ("Willful infringement requires that the defendant (1) know of the Asserted Patents; and (2) know that the defendant's actions constitute infringement."); MasterObjects, Inc. v. Amazon.com, Inc., No. C 20-08103 WHA, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021) ("Willfulness requires both knowledge of the infringed patent and knowledge of infringement. Subjective willfulness— when the alleged infringer acted despite a risk of infringement that was either known or so obvious it should have been known— can support an enhanced damages award. But, a claim for enhanced damages for willful infringement is not adequately stated when all that is alleged is knowledge of the patent and direct infringement."). Defendant does not dispute the First Amended Complaint plausibly alleges knowledge of the Asserted Patents. (See Def.'s Br. (Doc. 22) at 12–18.) Therefore, this court need

-17-

only determine whether Plaintiff has plausibly alleged knowledge of infringement.

Plaintiff alleges the following facts regarding Defendant's awareness it was infringing the '633 Patent. First, Plaintiff alleges that Defendant learned about the '633 Patent and its coverage of the Accused Products when the USPTO told Defendant about it during the patent prosecution of several of Defendant's patents. (FAC (Doc. 20) ¶ 38.) Second, Plaintiff alleges Defendant learned about the '633 Patent and its coverage of the Accused Products when Plaintiff sent Defendant a notice letter. (Id. ¶ 39.) Third, Plaintiff alleges that Defendant learned about the '633 Patent and its coverage of the Accused Products when Plaintiff provided Defendant with claim charts detailing Defendant's infringement of the '633 Patent. (Id. ¶¶ 40–42.)

Plaintiff alleges similar allegations regarding Defendant's awareness it was infringing the '112 Patent. First, Plaintiff alleges Defendant learned of the '112 Patent and its coverage of the Accused Products during the patent prosecution of several of Defendant's patents. (Id. ¶ 52.) Second, Plaintiff alleges that Defendant learned about the '112 Patent and its coverage of the Accused Products when Plaintiff provided Defendant with claim charts detailing Defendant's infringement of the '112 Patent. (Id. ¶¶ 53–55.)

Defendant argues these allegations do not establish pre-suit knowledge of infringement. (See Def.'s Br. (Doc. 22) at 14–18.) First, Defendant argues that references to the Asserted Patents during Defendant's patent prosecutions is insufficient to allege knowledge of infringement. (Id. at 14–15.) Second, Defendant argues that Plaintiff's notice letter was insufficient to give Defendant actual notice it was infringing the '633 Patent. (Id. at 17–18.) Third, Defendant argues that Plaintiff's allegations concerning provision of claim charts "should not be considered to form a basis for Purdue's willfulness claims because the alleged communications took place under the NDA, and Purdue's attempt to rely on such information in the FAC violates the NDA." (Id. at 15–16, 18.)

"Knowledge of infringement does not arise from knowledge of the asserted patent as a matter of course; it must be the subject of discrete, albeit related, allegations." MasterObjects, 2021 WL 4685306, at *4. If a plaintiff fails to allege a plausible link between publication of the asserted patent during the prosecution of the defendant's patents, then the complaint "fails to explain how citations to the [asserted patent] can give rise to [the defendant's] knowledge that the instrumentalities-at-issue infringe the [asserted] patent." Id. Likewise, "allegations that a patent owner sent a letter merely

-19-

notifying a third party of the existence of a particular patent, without accusing that third party of infringement, is, by itself, insufficient." Id. (citing Bayer Healthcare, 989 F.3d at 987).

Although this court has reservations about whether the references to the Asserted Patents during patent prosecution for Defendant's patents or notice letter Plaintiff sent Defendant are sufficient to plausibly allege knowledge of infringement, this court finds Plaintiff's allegations concerning provision of claim charts to Defendant are sufficient. "[T]o allege a willful infringement claim at the pleading stage, [the patentee] only needs to allege that [the accused infringer] w[as] on notice of potential infringement . . . and continued to infringe the patent." NovaPlast Corp. v. Inplant, LLC, Civ. No. 20-7396 (KM) (JBC), 2021 WL 5770264, at *10 (D.N.J. Dec. 6, 2021). In NovaPlast, the plaintiff alleged that it had mailed the defendants a cease-and-desist letter along with a claim chart analyzing how the accused products infringed certain claims of the plaintiff's patent. Id. at *2. The claim charts consisted of photographs of the accused products labeled with arrows and the asserted patent's claim language. Id. at *6. The court denied the defendants' motion to dismiss the plaintiff's willful infringement claim, finding that the cease-and-desist letters—

which included the claim charts and those charts' analyses regarding how the accused products infringed the plaintiff's patent—plausibly suggested the defendants were on notice of potential infringement of the asserted patent. Id. at *10.

Like the claim charts in NovaPlast, the claim charts that Plaintiff provided to Defendant plausibly suggest Defendant was on notice of potential infringement of the Asserted Patents. The claim charts include the Asserted Patents, the claim language, pictures and diagrams of the Accused Product, and arrows and notations explaining how the Accused Product meets the claim language of the Asserted Patents. (See '633 Claim Chart (Doc. 20-3); '112 Claim Chart (Doc. 20-4).) Plaintiff provided these claim charts to Defendant. (FAC (Doc. 20) ¶¶ 40-42, 53-55.) Plaintiff also met with Defendant to present these claim charts to Defendant. (Id. ¶¶ 42, 55.) This court finds these allegations plausibly suggest Defendant had knowledge of potential infringement of the Asserted Patents. See Puget Bioventures, LLC v. Biomet Orthopedics LLC, 325 F. Supp. 3d 899, 910-11 (N.D. Ind. 2018) (denying motion for judgment on the pleadings to dismiss willful infringement when the accused infringer continued to sell the accused product after receiving notice of the patent and being sent claim charts twice before the suit was commenced).

-21-

Whether willfulness can ultimately be established remains an open question, but this court finds it has been plausibly alleged. "At a minimum, the discretion that Halo confers on district courts to award enhanced damages based on the nature of the specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage." Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-CV-885-(JPO), 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017). "Allowing allegations of willful infringement to advance past the current stage appears prudent, given that, in the opening round of litigation, the full extent of the circumstances accompanying a given case will seldom be readily apparent to the Court." Puget Bioventures, 325 F. Supp. 3d at 910. For all the above-state reasons, this court declines to dismiss Plaintiff's allegations of willful infringement. See Bobcar, 2017 WL 74729, at *6 ("It is possible that further development of the facts of this case may reveal that it is not an 'egregious case' justifying enhanced damages, but at the pleading stage, especially in light of Halo, [the plaintiff] has carried its burden."); see also Finjan, Inc. v. ESET, LLC, Case No. 3:17-cv-0183-CAB-(BGS), 2017 WL 1063475, at *4 (S.D. Cal. Mar. 21, 2017) (denying motion to dismiss allegations of willful infringement but noting that the defendant "may introduce

-22-

evidence of its response to [the plaintiff's] notice of
infringement and the steps it took to address those
contentions").

### 3. Induced Infringement

To state a claim for induced infringement, the plaintiff
must allege "the alleged inducer [1] knew of the patent,
[2] knowingly induced the infringing acts, and [3] possessed a
specific intent to encourage another's infringement of the
patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317,
1328 (Fed. Cir. 2009); see also Lifetime Indus., Inc. v. Trim-
Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017) ("For an
allegation of induced infringement to survive a motion to
dismiss, a complaint must plead facts plausibly showing that the
accused infringer 'specifically intended [another party] to
infringe [the patent] and knew that the [other party]'s acts
constituted infringement.'" (alterations in original) (quoting
In re Bill of Lading Transmission & Processing Sys. Patent
Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012))).

Defendant does not contest the First Amended Complaint
plausibly alleges it had knowledge of the Asserted Patents, (see
Def.'s Br. (Doc. 22) at 12-18), so this court focuses its
analysis on the latter two elements.

-23-

Allegations that an accused infringer knew the accused products infringed one or more claims of the asserted patents, coupled with allegations that the accused infringer continued to sell the accused products to customers, adequately alleges that the accused infringer knowingly induced infringement. See Green Pet Shop Enters., LLC v. Telebrands Corp., Civil Action No. 17-6179 (SRC), 2018 WL 547544, at *2 (D.N.J. Jan. 24, 2018) ("It is plausible to infer that customers who purchased the accused product from [the defendant] then used it without authorization from the owners of the patents-in-suit, thus infringing those patents. It is also plausible to infer that [the defendant] knew that the customers to whom it sold the accused product were very likely to use their purchase and thereby infringe."). Defendant argues Plaintiff fails to plausibly allege that Defendant knowingly induced infringement because Plaintiff failed to allege Defendant knew of the alleged infringement when Defendant knowingly induced infringement. (See Def.'s Reply (Doc. 30) at 5-6.) Contrary to Defendant's argument, this court finds that Plaintiff adequately pled Defendant knew of potential infringement when it induced others to perform infringing acts. See supra Section III.B.2.

Here, Plaintiff has plausibly alleged Defendant knowingly induced infringement. Plaintiff alleges Defendant knew its

products infringed the Asserted Patents because Plaintiff provided claim charts detailing infringement to Defendant. (FAC (Doc. 20) ¶¶ 40-42, 53-55.) Plaintiff further alleges Defendant continued to "direct[] customers to purchase the Accused Products from various distributors on its website" and "continued making, using, offering for sale, selling, and importing the Accused Products" despite receiving notice of potential infringement. (Id. ¶¶ 43-44, 56-57.) These allegations taken together are sufficient to allege knowing inducement. See Green Pet Shop Enters., 2018 WL 547544, at *2.

"Evidence of 'active steps . . . taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005) (omission in original) (internal citation omitted) (quoting Oak Indus., Inc. v. Zenith Elecs. Corp., 697 F. Supp. 988, 992 (N.D. Ill. 1988)). For example, allegations that the defendant "performed various activities with specific intent to induce others . . . to infringe, by among other activities, providing instructions, support, and technical assistance for the use of the [accused product]" are sufficient to plausibly allege the defendant specifically intended to induce

-25-

infringement. <u>Nalco Co. v. Chem-Mod, LLC</u>, 883 F.3d 1337, 1355–56 (Fed. Cir. 2018).

Here, Plaintiff alleges that Defendant not only continues to create and disseminate the Accused Products but also encourages infringement through its "product manuals, instructions, promotional and marketing materials, and/or technical materials." (FAC (Doc. 20) ¶¶ 43, 56.) This court finds this allegation plausibly suggests Defendant instructed on how to engage in an infringing use of the Accused Products. <u>See</u> <u>Metro-Goldwyn-Mayer Studios</u>, 545 U.S. at 936; <u>Nalco</u>, 883 F.3d at 1355–56.

In summary, this court finds Plaintiff has adequately pleaded the elements of an induced infringement claim. Therefore, this court declines to dismiss Plaintiff's allegations of induced infringement.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this court will grant Defendant's motion to seal, (Doc. 23), and deny Defendant's motion to dismiss, (Doc. 21).

**IT IS THEREFORE ORDERED** that Defendant's motion to seal, (Doc. 23), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss, (Doc. 21), is **DENIED.**

-26-

This the 10th day of August, 2022.

_____
United States District Judge