IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | 1:21cv840 |
| WOLFSPEED, INC., | )<br>)<br>) | |
| Defendant. | ) | |

**ORDER**

This case comes before the Court on Plaintiff's Motion to Compel (Docket Entry 105; see also Docket Entry 106 ("Supporting Brief")) and related Motions to Seal (see Docket Entry 107 ("Plaintiff's Sealing Motion"); Docket Entry 114 ("Defendant's Sealing Motion")), as well as Defendant's Motion for Leave to File a Sur-Reply (Docket Entry 122 (the "Sur-Reply Motion"); see also Docket Entry 123 ("Supporting Memorandum")).  For the reasons that follow, the Court denies the Motion to Compel, grants in part and denies in part Plaintiff's Motion to Seal, grants Defendant's Motion to Seal, and denies the Sur-Reply Motion as moot.

**I. Background**

The instant Motion to Compel follows a prior motion to compel Plaintiff filed in December 2022 (Docket Entry 54 (the "prior Motion")), as well as a Motion for Protective Order Defendant filed shortly thereafter (Docket Entry 56).  The Motion to Compel, the prior Motion, and the Motion for Protective Order all address(ed),

in large part, the deposition of Julio Garceran, Defendant's Chief Intellectual Property Counsel.  (See generally Docket Entry 54; Docket Entry 56; Docket Entry 105.)

As background, Plaintiff contacted Defendant in November 2022 and requested dates to depose Garceran, and other employees of Defendant.  (See Docket Entry 55-2 at 18.)  At that time, Plaintiff identified "willfulness" as the topic for which it sought to depose Garceran.  (See id. at 17-18; see also id. at 14 (email from Plaintiff's counsel seeking "willfulness depositions" of Garceran and two other Defendant employees), 15 (email from Plaintiff's counsel citing relevance of deposition as that Garceran "attended the meetings between P[laintiff] and [Defendant] pre-suit where claim charts were presented, thereby providing [Defendant] notice of infringement").)

Defendant objected to the depositions (see id. at 14), to which Plaintiff responded that "[t]he depositions are on a legitimate topic (willfulness)" (id. at 13).  Plaintiff then reiterated its demand for three willfulness depositions, stating that:

> [t]he deposition[s] will cover (a) what information was conveyed to [Defendant] by P[laintiff] pre-suit in written and oral form to put [Defendant] on notice of actual infringement; (b) how the information P[laintiff] provided was received by [Defendant] at the meetings . . .; (c) who at [Defendant] received the information P[laintiff] provided after the meetings; and (d) what [Defendant] did with the information P[laintiff] provided and why."

2

(Id. at 11.)  Plaintiff and Defendant continued to disagree as to the number and scope of the depositions (see id. at 2-10), prompting the prior Motion and the Motion for Protective Order.

In the prior Motion's supporting brief, Plaintiff again described the scope of the depositions, stating that "[t]he information sought in the noticed depositions is highly relevant to P[laintiff]'s willful and induced infringement claims, and in particular, pre-suit notice."  (Docket Entry 55 at 1; see also id. at 1-2 (factual background section discussing focus as pre-suit discussions), 7 (supporting claim of relevance by noting that "Garceran [and two other Defendant employees] all attended the pre-suit meetings" and that "all three are the recipients of the information P[laintiff] contends makes [Defendant] a willful infringer").)  Plaintiff went on to assert that "[t]he witnesses will be asked to testify about (1) the information they received from P[laintiff]; (2) their reactions (or lack thereof) to receiving the information; (3) what information they provided P[laintiff] in response or failed to provide); and (4) to whom else at [Defendant] they conveyed the information from P[laintiff]" (id. at 4-5), i.e., the same four topics Plaintiff previously relayed to Defendant (see Docket Entry 55-2 at 11).  Plaintiff did not identify or allude to any other topics for its requested depositions.  (See generally id.)

3

Then, in the brief supporting the Motion for Protective Order, Defendant framed the dispute identically, stating in its introduction that "P[laintiff]'s **sole basis** for seeking to depose [] Garceran [and two other Defendant employees] concerns their participation in confidential pre-suit licensing negotiations . . . ." (Docket Entry 57 at 4 (emphasis added).) In response, Plaintiff did not contest that framing or identify additional topics for the depositions; instead, Plaintiff restated the same four deposition topics (see Docket Entry 65 at 6), as well as its view that "this information is directly relevant to the issue of willfulness" (id.).

The Court (per the undersigned United States Magistrate Judge) accordingly set out to resolve the issues the parties presented. (See Docket Entry 88 at 17-18 (observing that prior Motion and Motion for Protective Order "present the same two core issues: (1) can Plaintiff depose Defendant's three representatives (two of whom serve as attorneys) and, if so, (2) what can Plaintiff ask them?").) In that regard, the Court's analysis focused exclusively on the four topics Plaintiff presented in the prior Motion. (See id. at 19-24.) The Court went on to conclude that Plaintiff could depose two of three Defendant employees (see id. at 24-28) as to two of the four topics Plaintiff identified (see id. at 19-24). In so doing, the Court justified its reasoning by citing "the **limited scope of discovery** (as detailed earlier in th[at] Order) [which

4

would] ameliorate[] the risk of Plaintiff probing issues protected by the attorney-client privilege or workproduct doctrine" (id. at 27 (emphasis added)), and further explained that "depositions of a party's attorney justify some departure from the normal rules of discovery" (id. at 28 (cleaned up)).

With the depositions seemingly resolved, Plaintiff thereafter requested available dates for Garceran. (See Docket Entry 108-3 at 4.) Two days prior to Garceran's deposition, counsel for Defendant emailed Plaintiff's counsel that, "due to the limited deposition scope allowed by the February 28, 2023 Order, namely, 'the information Plaintiff shared with Defendant during pre-suit negotiations, as well as to whom Defendant's representatives conveyed that information,' [Defendant] assume[s] that the deposition should last no more than two hours." (Id. at 3.) Then, for the first time (at least as far as the record reflects), Plaintiff contended that "no limits exist as to any [] topics [other than willfulness]." (Id. at 2; see also id. (email from Plaintiff's counsel stating that "[Garceran's] deposition on other topics will continue as long as [Plaintiff's counsel] ha[s] relevant questions to ask" and that Garceran should "clear his ***entire day***" (emphasis in original, red font omitted).) Despite the last-minute disagreement as to scope, Garceran's deposition proceeded. (See Docket Entry 106 at 2-3.)

5

## II. Discussion

According to the Supporting Brief (and as reflected in the deposition transcript), over the course of the deposition, "counsel for [Defendant] objected based on attorney client privilege close to 200 times, and in each instance either instructed [] Garceran not to answer the question outright or told him to answer only if he could do so without revealing privileged information." (Id. at 3 (emphasis omitted); see also Docket Entry 108-2 at 11-236 (deposition transcript).) The Supporting Brief contends "that the privilege objections were improperly interposed, and contrary to the Rules." (Docket Entry 106 at 3-4.) The Supporting Brief asserts further that the deposition consisted of "legitimate questions on legitimate discovery topics" (id. at 4), and in a footnote cites approximately **25 topics other than willfulness** for which counsel for Defendant raised allegedly improper objections (see id. at 3-4 n.7).

To support its arguments as to the legitimacy of the questioning and the impropriety of the objections, the Supporting Brief, for 17 pages, reproduces excerpts of Garceran's deposition. (See id. at 5-21.) The Supporting Brief then states that "[t]he Garceran Transcript literally speaks for itself, and what it says clearly is that [Defendant]'s counsel obstructed the deposition, made specious and frivolous privilege objections, and thereby intentionally wasted the time of P[laintiff]'s counsel." (Id. at

6

22.)  As a result, the Motion to Compel demands that Defendant reproduce Garceran for a second deposition, and compensate Plaintiff for "associated fees and costs."  (Docket Entry 105 at 2.)

In its Response to the Motion to Compel (the "Response"), Defendant argues that "the questions P[laintiff] asked during the deposition far exceeded the scope it had previously represented to the Court and [Defendant]."  (Docket Entry 113 at 6.)[1]  The Response contends further that, setting aside the impermissible scope of much of the questioning, "[t]he objections and instructions by [Defendant]'s counsel at the deposition were plainly proper because the objectionable questions directly targeted protected information."  (Id. at 5.)  In that regard, the Response notes that "[t]he bulk of [] Garceran's knowledge regarding issues relevant to this case was obtained while formulating [Defendant]'s litigation strategy and managing this litigation."  (Id.)  The Response also highlights that the Motion to Compel "contains little analysis[ and] fails to set forth any reasoning as to why any objection is purportedly improper."  (Id. at 7.)  Finally, and relatedly, Defendant included as an exhibit to the Response an appendix of questions to which its counsel raised

---

1 Pin citations to this document refer to the page number which appears in the footer appended to the document upon its docketing via the CM/ECF system (not to any internal pagination, which includes a mix of Roman and Arabic numerals).

7

objections during Garceran's deposition, and the justification for those objections. (See Docket Entry 113-2 at 1-27.)

In the Reply, Plaintiff asserts that it "never agreed to limit the scope of [] Garceran's deposition" (Docket Entry 119 at 3), in part because "Garceran is a legitimate fact witness on multiple relevant topics" (id.). The Reply continues by arguing that "Garceran is a proper source of discoverable information on [Defendant]'s licensing policies, history, and practices" (id. at 2), as well as "a legitimate source of admissions on the issue of indefiniteness" (id. at 3). Further, the Reply disputes several of the privilege objections Defendant discussed in the Response, contending that the date "*when* a party hired outside counsel is not privileged" (id. at 4 (emphasis in original)), "[c]laims construction positions can be challenged by party depositions" (id. at 5), "questions regarding the basis of an inequitable conduct defense are also common" (id.), and inquiry about "whether [Defendant] intends to rely upon advice of counsel was not improper" (id. at 6), while also asserting that "the existence of documents is never privileged" (id.). Finally, Plaintiff extended Defendant's appendix of privilege objections by adding its own column, wherein Plaintiff responded to Defendant's justifications for its objections. (See Docket Entry 119-1 at 2-36.)

The Court will deny the Motion to Compel for two reasons. First, the deposition vastly exceeded the scope authorized by the

8

Court (see Docket Entry 88 at 19-24), and primarily addressed topics that Plaintiff failed to include in the prior Motion (see Docket Entry 54 at 1-2). As documented in the Background section, from November 2022 until two days before Garceran's deposition, Plaintiff exclusively identified willfulness as the topic for the deposition. (See id.; see also Docket Entry 55-2 at 2-18.) Tellingly, when Defendant stated in the Motion for Protective Order that "P[laintiff]'s **sole basis** for seeking to depose [] Garceran . . . concerns [his] participation in confidential pre-suit licensing negotiations" (Docket Entry 57 at 4 (emphasis added)), Plaintiff addressed only those four topics concerning willfulness, without identifying any others (see Docket Entry 65 at 6).

Although the Court's prior Order did not expressly preclude examination of topics other than willfulness (see Docket Entry 88 at 28-29 (ordering that deposition "shall include" two topics and "shall not include" two other topics)), the Court did highlight "the limited scope of discovery" (id. at 27) permitted by that Order and reminded the Parties that "depositions of a party's attorney [i.e., Garceran] justify some departure from the normal rules of discovery" (id. at 28 (cleaned up)). In light of that language, and the reasoning underlying it, Plaintiff's attempt to expand the deposition beyond willfulness to 25 additional topics (see Docket Entry 108 at 3-4 n.7) contravenes the limitations implicit in the prior Order.

9

Second, the Supporting Brief fails to meaningfully develop Plaintiff's arguments to demonstrate either that (1) the additional topics Plaintiff's counsel raised in the deposition (and cited in the Motion to Compel) bear relevance to Plaintiff's infringement claim, or that (2) the specific questions Plaintiff's counsel asked in the deposition appropriately investigate those topics. Simply reproducing large swaths of the deposition (absent any corresponding analysis), and describing all questions as "legitimate questions on legitimate discovery topics" (Docket Entry 108 at 4) and all objections as "improperly interposed" (id.) does not suffice, see Boyles v. Langmore Cap., LLC, No. 1:20-CV-545, 2020 WL 4719282, at *3 (M.D.N.C. Aug. 13, 2020) (criticizing the "kitchen-sink approach" to briefing). Similarly, the bare contention that the deposition transcript "speaks for itself" (Docket Entry 106 at 22) falls short because "[i]t is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument." Hayes v. Self-Help Credit Union, No. 1:13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014); see also Flame S.A. v. Industrial Carriers, Inc., No. 2:13-CV-658, 2014 WL 7185199, at *4 (E.D. Va. Dec. 16, 2014) (reiterating that "conclusory statements, devoid of any further explanation, cogent argument or legal support, are not persuasive").

Put another way, "[a] party should not expect a court to do the work that it elected not to do." Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014); see also Wilson v. Commissioner of Soc. Sec., No. 1:21-CV-00249, 2022 WL 4389713, at *4 (W.D.N.C. Sept. 22, 2022) (explaining that citation to cases without any explanation of their relevance or applicability renders argument undeveloped). At bottom, Plaintiff's conclusory assertions of relevance do not illuminate "how th[e] information will prove patent infringement as alleged in the pleadings." Johns Hopkins Univ. v. Datascope Corp., Civ. Action No. 05-759, 2007 WL 1450367, at *2 (D. Md. May 16, 2007) (denying motion to compel because plaintiff's "conclusory at best" statements of relevance did not demonstrate that discovery "f[e]ll within the scope of discovery under Rule 26(b)(1)"). By conclusorily asserting the relevance of all topics and questions, and describing all Defendant's objections as improper, Plaintiff has failed to meet its obligation to provide "argument," M.D.N.C. LR 7.2(a)(4), including "refer[ences] to all statutes, rules and authorities relied upon," id.

For all practical purposes, Plaintiff failed to submit the required brief for its Motion to Compel. See M.D.N.C. LR 7.3(a) & (j). "A motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied." M.D.N.C. LR 7.3 7.3(k).

11

Plaintiff's Reply, including the expanded version of Defendant's appendix, does provide more analysis and argument than the Supporting Brief. However, Plaintiff failed to include that analysis and argument at the time it filed its Motion to Compel, and "[a] reply brief is limited to discussion of matters **newly raised** in the response," M.D.N.C. LR 7.3(h) (emphasis added); see also Tyndall v. Maynor, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (documenting consensus view that "reply briefs may not inject new grounds and that an argument that was not contained in the main brief is not before the Court" (internal brackets and ellipses omitted)). Plaintiff made conclusory assertions about the relevance and propriety of its questions (and the impropriety of Defendant's objections) in the Supporting Brief (see Docket Entry 108); by rebutting those conclusory assertions, Defendant did not "newly raise[ anything] in the [R]esponse," M.D.N.C. LR 7.3(h).

The United States Court of Appeals for the Fourth Circuit has recently emphasized that "new arguments cannot be raised in a reply brief before the district court[ due to] the risk of depriving a nonmovant an opportunity to respond." De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022) (internal citation omitted). In that regard, Plaintiff here, by failing to provide analysis or argument as to any individual topic or question in the Supporting Brief, essentially presented nothing of substance to which Defendant could respond. Allowing Plaintiff to wait until

12

its Reply to provide specific arguments would risk depriving Defendant of "an opportunity to respond," id., and run afoul of this Court's Local Rules, see M.D.N.C. LR 7.3(h) (limiting scope of reply); M.D.N.C. LR 7.3(k) ("The failure to file a brief . . . within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief . . ., except upon a showing of excusable neglect."). Accordingly, the Court declines to consider Plaintiff's arguments in the Reply, and will deny the Motion to Compel.[2]

### III. Motions to Seal

*Docket Entries 107 & 111*

Plaintiff filed its Motion to Seal "solely for the purpose of complying with Local Rules 5.4 and 102.2" (Docket Entry 107 at 1) and "does not claim confidentiality as to its [Supporting] Brief or the Exhibits" (id. at 2). Defendant filed a response in which it argued for continued sealing of certain excerpts from the

---

2 Because of this disposition, the Court need not address Defendant's argument that Plaintiff failed to satisfy Rule 37's conference requirement prior to filing the Motion to Compel (which would have qualified as a newly raised matter to which Plaintiff could reply). (See Docket Entry 113 at 19-20.) Due to the denial of the Motion to Compel, the Court must order expense-shifting unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Given that Defendant did not request expense-shifting (see Docket Entry 113 at 23), as well as that the Court's prior Order did not explicitly foreclose Plaintiff's efforts to depose Garceran on matters other than willfulness, the Court concludes that the circumstances presented here fall within the exceptions to expense-shifting.

13

Supporting Brief and the exhibits, contending that "[t]he deposition transcript . . ., as well as portions thereof that are reproduced in P[laintiff's Supporting Brief], contains confidential information relating to [Defendant]'s licensing practices and confidential negotiations between P[laintiff] and [Defendant] before the filing of this lawsuit." (Docket Entry 111 at 2.)

As described more fully in this Court's Order on the prior Motion (Docket Entry 88), the Non-Disclosure Agreement ("NDA") into which the Parties entered does shield the disclosure and use of some information; specifically, "[t]he NDA . . . prohibits 'use of Confidential Information . . . [, which includes] technical, legal, and financial information directly related to the '633 Patent.'" (Docket Entry 88 at 8 (internal brackets and ellipses omitted) (citing Docket Entry 59-1 at 2-3).) "However, the NDA also absolves each Party of it confidentiality obligations for 'information known to a Party prior to the Effective Date of the NDA.'" (Id. at 20 (internal brackets and ellipses omitted) (citing Docket Entry 59-1 at 3).) Accordingly, the NDA's terms merit sealing for Defendant's technical, legal, and financial information in the Supporting Brief and exhibits.

As a result, the Court will grant Plaintiff's Sealing Motion in part, for the redactions in Docket Entry 112 at 21, and Docket Entry 112-1 at 166-168, the bottom of 170, 171-173, 178-181, 186, 204-205, and 209-211, as those excerpts from Garceran's deposition

14

plausibly reflect his and/or other of Defendant's employees' technical and/or legal judgment(s).

The Court will, however, deny Plaintiff's Motion to Seal as to the proposed redactions in Docket Entry 112-1 at 157-160, 165, 169, and the top of 170, because those excerpts contain no Confidential Information (as the NDA defines it) of Defendant, and Defendant's conclusory assertion to the contrary that the excerpts do contain "confidential and sensitive business information" (Docket Entry 111 at 2) does not suffice, see Fed. R. Civ. P. 26(c)(1) (requiring predicate showing of good cause for sealing); M.D.N.C. LR 5.4(c)(3) (stating that "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support" such as "affidavits or declarations" as well as "citation[s] to any supporting statutes, case law, or other authority").

*Docket Entry 114*

Defendant also moved to seal one excerpt from an exhibit to its Response to the Motion to Compel. (See Docket Entry 114 at 1-2.) The portion of that exhibit contains an excerpt from Garceran's deposition that the Court previously concluded should remain under seal due to the NDA's prohibition on use by Plaintiff of Defendant's Confidential Information. Accordingly, the Court will grant Defendant's Motion to Seal.

15

## IV. Sur-Reply Motion

Finally, Defendant moved for leave to file a sur-reply based on the contention that, "[i]n its [R]eply brief, Plaintiff [] raise[d] new arguments and new evidence that were not included in its opening submissions to this Court." (Docket Entry 122 at 1.) However, due to the disposition of the Motion to Compel, Defendant's "sur-reply would not alter the Court's analysis." Chubb & Son v. C & C Complete Servs., LLC, 919 F. Supp. 2d 666, 679 (D. Md. 2013). The Court will therefore deny as moot Defendant's Sur-Reply Motion. See Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC, No. 1:21-CV-00515, 2022 WL 3446051, at *5 (M.D.N.C. Aug. 17, 2022) (after denying plaintiff's motion, denying defendant's motion to file sur-reply as moot).

## V. Conclusion

Plaintiff's request to depose Garceran on matters other than willfulness runs afoul of the Court's prior Order and the Local Rules; however, some of the materials in the Parties' submissions should remain under seal.

**IT IS THEREFORE ORDERED** that:

1) the Motion to Compel (Docket Entry 105) is **DENIED;**

2) Plaintiff's Motion to Seal (Docket Entry 107) is **GRANTED IN PART**, in that the redactions in Docket Entry 112 at 21, and Docket Entry 112-1 at 166-168, the bottom of 170, 171-173, 178-181, 186, 204-205, and 209-211 shall remain, but the redactions in Docket

16

Entry 112-1 at 157-160, 165, 169, and the top of 170 shall be removed;

3) Plaintiff shall, by June 21, 2023, re-file Docket Entry 106 and exhibits thereto in conformity with the above specifications;

4) Defendant's Motion to Seal (Docket Entry 114) is **GRANTED;** and

5) Defendant's Sur-Reply Motion (Docket Entry 122) is **DENIED AS MOOT.**

This 7th day of June, 2023.

>        /s/ L. Patrick Auld
>      **L. Patrick Auld**
>   **United States Magistrate Judge**