# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     1:21cv840<br>) |
| WOLFSPEED, INC., | )<br>) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant's Motion for Protective Order (Docket Entry 129 (the "Analyst Motion); see also Docket Entry 130 ("Supporting Memorandum")), to which Plaintiff responded (Docket Entry 135) and Defendant replied (Docket Entry 146). The parties also filed related sealing materials. (See Docket Entries 136-138, 144, 147, 148.) For the reasons that follow, the Court denies the Analyst Motion and grants the requests for sealing.

### I. Background

This case involves alleged patent infringement by Defendant in its manufacture of "certain silicon carbide metal oxide semiconductor field effect transistors (SiC MOSFETs)." (Docket Entry 88 at 2 (recounting factual background in prior Order).) No strangers to discovery disputes (see, e.g., id.), the parties return here to contest the propriety of eleven third-party subpoenas Plaintiff issued to financial "[a]nalysts [who] cover

[Defendant] in the financial press, [and] offer[] opinions on the outlook of [Defendant]'s stock price." (Docket Entry 130 at 8.) The parties conferred "regarding the[] subpoenas, but [Plaintiff] refused to withdraw the[m]." (Id. at 9.) As a result, Defendant seeks a protective order requiring [Plaintiff] to withdraw the third-party subpoenas." (Docket Entry 129 at 1.)

## II. Discussion

As mentioned above, the Analyst Motion targets "eleven third-party subpoenas issued by [Plaintiff to] . . . stock analysts who cover [Defendant] in the financial press." (Docket Entry 130 at 4.) The subpoenas generally seek production of communications and documents exchanged between Defendant and the analysts, as well as documents the analysts created related to Defendant. (See Docket Entry 130-1 at 11.) Defendant asserts entitlement to a protective order on several grounds, including relevance, burden, and de facto violation of an agreement between the parties to limit discovery to ten email custodians. (See Docket Entry 130 at 4-6.)

As an initial matter, the Court must determine the appropriate Federal Rule of Civil Procedure to guide its analysis. Plaintiff directed these subpoenas (under Federal Rule of Civil Procedure 45) to third parties across several judicial districts. (See Docket Entry 130-1 at 2, 5, 12, 19, 26, 33, 40, 47, 54, 61, 68; Docket Entry 130-2 at 2; Docket Entry 130-3 at 2, 5.) Typically, "the court for the district where compliance is required," Fed. R. Civ.

2

P. 45(d)(3)(A), retains jurisdiction to resolve disputes related to third-party subpoenas, see Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, No. 1:12CV27, 2014 WL 2559285, at *1 (M.D.N.C. June 6, 2014) (noting that, where "subpoenas order compliance in the Eastern District of Missouri[, ] that court thus resolves motions requesting quashing or modifying a subpoena"). Moreover, "a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005); see also Eichenwald v. Rivello, 321 F. Supp. 3d 562, 564 (D. Md. 2018) (finding "no cases . . . that depart from this general rule"); Jefferson v. Biogen IDEC Inc., No. 5:11-CV-00237, 2012 WL 1150415, at *1 (E.D.N.C. Apr. 5, 2012) (discussing authority recognizing that "party lacks standing to move to quash a subpoena issued to a nonparty when the party seeking to challenge the subpoena fails to show a personal right or privilege in the information sought by the subpoena"). Defendant here did not assert a personal right or privilege in the materials sought by Plaintiff's subpoenas. (See generally Docket Entry 130.) As presented, therefore, this Court lacks jurisdiction, and Defendant lacks standing, to address disputes related to the third-party subpoenas under Federal Rule of Civil Procedure 45.

Defendant, however, brought the Analyst Motion "under [Federal] Rule [of Civil Procedure] 26." (Docket Entry 129 at 1.) In the Reply, Defendant contends further that it "is not required to demonstrate a personal interest or privilege in the documents sought because that requirement is specific to [Federal] Rule [of Civil Procedure] 45, not [Federal] Rule [of Civil Procedure] 26." (Docket Entry 146 at 5.) More specifically, Defendant here seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1). (See Docket Entry 129 at 1.) In support, Defendant cites some authority for the proposition that the Court may "reach the merits of [Federal] Rule [of Civil Procedure] 26 challenges to subpoenas even where the movant lacked standing to do so under Rule 45." (Docket Entry 146 at 8 (citing North Carolina Mut. Life Ins. Co. v. Stamford Brook Cap., LLC, No. 1:16CV1174, 2020 WL 13303331 (M.D.N.C. Nov. 16, 2020)).)

The Court, however, does not find Defendant's cited authority on point, or persuasive. For example, the case directly cited by Defendant involved a motion to quash, not a motion for protective order. See North Carolina Mutual, 2020 WL 13303331 at *3 n.1. Notwithstanding that posture, the court in North Carolina Mutual instead chose to "interpret[ the] motion as one for a protective order," id., citing another case as support for that interpretive approach, see id. (citing HDSherer LLC v. Natural Molecular Testing Corp., 292 F.R.D. 305 (D.S.C. 2013)). That case, which involved a

4

parallel motion to quash and motion for protective order, in turn, observes that a party "has standing to challenge the subpoenas under [Federal] Rule [of Civil Procedure] 26 standards, regardless of whether it has standing to bring a motion to quash under [Federal] Rule [of Civil Procedure] 45." HDSherer, 292 F.R.D. at 307. As support, HDSherer LLC cites Singletary v. Sterling Transp. Co., 289 F.R.D. 237 (E.D. Va. 2012). See HDSherer, 292 F.R.D. at 307. But in Singletary, the court found that a former employee had standing, **_under Federal Rule of Civil Procedure 45_**, to challenge a subpoena issued to his former employer, on the grounds that he had personal interest in his employment records. See Singletary, 289 F.R.D. at 240. Then, in a footnote, the court in Singletary noted that the former employee also "ha[d] standing to challenge [the] subpoena[] duces tecum as **_irrelevant and overbroad_** under [Federal] Rule [of Civil Procedure] 26." Id. at 240 n.2 (emphasis added).

The line of authority on which Defendant relies, then, involves a series of alternative or hypothetical holdings that do not establish a per se rule permitting a party that lacks standing under Federal Rule of Civil Procedure 45 to instead move to quash a third-party subpoena under Federal Rule of Civil Procedure 26(c). Indeed, irrelevance and overbreadth do not count among the grounds on which a court may issue a protective order. See Fed. R. Civ. P. 26(c)(1). Further, any such rule would find ambiguous support in the text for Federal Rule of Civil Procedure 26(c), which permits

5

"[a] party or any person **from whom discovery is sought** [to] move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1).

Even without resolving the applicability of the modifying phrase in the foregoing provision, the Court reads the rest of the Rule to require, at the least, that the movant seeks personal relief, and not relief for some third party that has not made a similar plea before the Court. See, e.g., id. (providing that the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense); Eichenwald, 321 F. Supp. 3d at 564 (holding that party could not quash third-party subpoena under Federal Rule of Civil Procedure 26(c) where it "d[id] not explain how these subpoenas will result in annoyance, embarrassment, oppression, or an undue burden or expense to *him*" (internal brackets and quotation marks omitted) (emphasis in original)); see also Warth v. Seldin, 422 U.S. 490, 499 (1975) (explaining fundamental principle of standing that parties "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties").

The Court does not find that Defendant has sufficiently asserted its own "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), in order to demonstrate good cause for a protective order. As for annoyance

6

and/or embarrassment, the Supporting Memorandum claims that the analysts "are being bothered [by Plaintiff] because they offer analysis on [Defendant]'s stock price" (Docket Entry 130 at 18), and that this third-party discovery campaign "thus ha[s] the potential of harming [Defendant]'s reputation" (id.). Defendant has not adequately demonstrated that any annoyance the analysts have experienced as a result of responding to the subpoenas would harm Defendant so as to warrant issuance of a protective order on Defendant's behalf, see Eichenwald, 321 F. Supp. 3d at 564, particularly given that no analysts have objected to or moved to quash a subpoena (see Docket Entry 135 at 6-7), and at least one has already produced documents in response (see Docket Entry 135-7 at 2).[1]

With regard to undue burden, the Supporting Memorandum argues that "[Plaintiff]'s subpoenas impose a burden on th[]e analysts, requiring them to spend significant time and resources responding to them." (Docket Entry 130 at 18.) But this argument, again unsupported by any record evidence (and perhaps undermined by the fact that no third-party analyst has brought a motion to quash), reflects no burden on Defendant. See Eichenwald, 321 F. Supp. 3d

---

1 Furthermore, Defendant's vague and unsubstantiated allegation that the analysts may, as a result of receiving and responding to subpoenas related to Defendant, change their professional outlook on (and to the ultimate detriment of) Defendant, does not suffice to establish any sort of embarrassment to Defendant unique from that of any litigant.

7

at 564.  As for a burden or expenses borne by Defendant, the Supporting Memorandum notes only that, because "the subpoenas require compliance in [several judicial districts,] . . . [Defendant] w[ill] have to expend significant resources challenging the subpoenas across the country."  (Docket Entry 130 at 18-19.) But a cognizable burden under Federal Rule of Civil Procedure 26(c) must derive from compliance with a discovery request, not from disputing the same.  Otherwise, parties could employ ancillary motions practice for routine discovery requests to manufacture an undue burden.  Simply put, Federal Rule of Civil Procedure 26(c) does not seek to remedy self-inflicted harms.

Although Defendant lacks standing under Federal Rule of Civil Procedure 45, and has not alleged a remediable harm under Federal Rule of Civil Procedure 26(c), that does not end the inquiry.  In fact, the Court retains an independent obligation under Federal Rule of Civil Procedure 26(b)(2)(C), "[o]n motion or *on its own*, [to] limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).[2]  Under that Rule, "[p]arties may obtain discovery regarding any nonprivileged matter

---

[2] This independent obligation and authority further suggests that courts should not read Federal Rule of Civil Procedure 26(c) so expansively as to permit parties that have suffered no burden to move for protective orders targeting third-party discovery.

8

that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Relevance is not, on its own, a high bar[, and t]here may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019). "[Federal] Rule [of Civil Procedure] 26(b)(1) therefore imposes a second requirement[,] that discovery into relevant matters must also be proportional to the needs of the case[, which] requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit." Consumer Fin. Prot. Bureau v. Nexus Servs., Inc., No. 5:21-CV-00016, 2022 WL 1597840, at *5 (W.D. Va. May 19, 2022) (internal citations and quotation marks omitted). Accordingly, "the Court [will] consider[] Defendant['s] request for protective order as to the nonparties' information under [Federal] Rule [of Civil Procedure] 26(b)[], and not under [Federal] Rule[s of Civil Procedure 26(c) or] 45(d)(3)(A)." Id. at *6. But, in so doing, the Court will not apply a "more demanding variant of the proportionality analysis," Jordan, 921 F.3d at 189, because, as Defendant concedes, this dispute does not involve a Federal Rule of Civil Procedure 45 motion to quash "a subpoena issued against a nonparty," id.

9

Turning first to relevance, the Supporting Memorandum contends that "the internal and private documents of the analysts have no relevance to any claims or defenses in this case" (Docket Entry 130 at 12), because they "have no bearing on the determination of a reasonable royalty, which . . . presumes a hypothetical negotiation between [Plaintiff] and [Defendant] regarding a royalty rate" (id.). The Supporting Memorandum further asserts that, as for email communications between Defendant and the analysts, Defendant "already produced the attachments to the emails[, and t]he text of the emails themselves do not relate to the reasonable royalty analysis." (Id. at 14.)

In response, Plaintiff counters that "[t]he documents sought are relevant to the determination of a reasonable royalty, [Defendant]'s credibility, settlement value, and damages should the case proceed to trial." (Docket Entry 135 at 4.) In that regard, the Response maintains that "[s]ales forecasts are relevant to calculating the royalty base." (Id.; see also id. at 8 (noting that "[Defendant]'s statements about the volume of Design-Ins it has achieved, the volume of Design-Wins it expects to produce revenue, and the efficiency of its manufacturing processes over the damages period are relevant to damages").)

The Court finds that the subpoenas, which target communications and documents concerning Defendant's sales forecasts and projections, meet Federal Rule of Civil Procedure 26(b)(1)'s

10

"not . . . high bar," Jordan, 921 F.3d at 188, for relevance because Plaintiff could use said materials in evaluating a reasonable royalty. Defendant argues that determination of a reasonable royalty entails only "a hypothetical negotiation between [Plaintiff] and [Defendant]." (Docket Entry 146 at 5.) But, "[t]he Federal Circuit has acknowledged that there are many acceptable methods of calculating a reasonable royalty rate." Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc., No. 15-CV-522, 2018 WL 10687383, at *4 (W.D. Wash. Mar. 28, 2018); see also In re Deutsche Bank Tr. Co. Americas, 605 F.3d 1373, 1377 (Fed. Cir. 2010) (holding that "Federal Circuit law applies to discovery matters if the determination implicates an issue of substantive patent law"). Because "estimating a reasonable royalty is not an exact science . . ., there may be more than one reliable method for estimating a reasonable royalty." Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1296 (Fed. Cir. 2015); see also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("Litigants routinely adopt several approaches for calculating a reasonable royalty."). One approach, "the analytical method, focuses on the infringer's **_projections of profit_** for the infringing product." Lucent, 580 F.3d at 1324 (emphasis added); see also Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc., No. 17-CV-1734, 2021 WL 982732, at *11 (D. Del. Mar. 16, 2021) ("The Federal Circuit has affirmed use of the analytical approach where the

11

infringer's usual net profit is subtracted from its anticipated net profit realized from sales of infringing products.").

Although, "the most common method by far is the hypothetical negotiation approach," Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd., No. 1:17-CV-01973, 2021 WL 6690279, at *3 (N.D. Ill. Dec. 14, 2021), "[a]ll approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case," Summit 6, 802 F.3d at 1296. At this stage in the proceedings, Plaintiff may obtain discovery to better ascertain the most accurate estimation of a reasonable royalty. See Summit 6, 802 F.3d at 1296 (observing that "all approximations involve some degree of uncertainty," and that "it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination").[3]

As for burden, Defendant primarily contends that the "subpoenas impose a burden on th[]e analysts, requiring them to

---

3 The analysis above distinguishes this case from Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990) (reversing denial of motion to quash subpoenas purportedly aimed at lost profits evidence), on which Defendant relied in seeking to block the subpoenas at issue (see Docket Entry 130 at 13-14). Having concluded the subpoenas target relevant information as it relates to reasonable royalty damages, the Court does not consider whether the requested documents and communications also bear relevance to impeachment and/or settlement value (see Docket Entry 135 at 4).

12

spend significant time and resources responding to them." (Docket Entry 130 at 18.) Additionally, the Supporting Memorandum states that "[Defendant] has already produced the attachments to the emails sent to [the a]nalysts" (id. at 14), "[Plaintiff] could have obtained [the information] from Defendant" (id. at 15), and that, by failing to "show[] that the[ emails] contain information that is not contained within the thousands of pages produced by [Defendant, Plaintiff] has articulated no theory that would justify burdening third parties with this discovery" (id.).

None of these arguments warrant quashing the subpoenas. First, as explained previously, Defendant cannot invoke a third party's supposed burden to obtain relief. See, e.g., Eichenwald, 321 F. Supp. 3d at 564. Second, although Defendant appears to have produced documents that it sent to **some** of the analysts (see Docket Entry 130 at 7 (recounting that Plaintiff's discovery request included seven analysts)), the subpoenas here target additional analysts, and also call for email correspondence as well as internal documents created by the analysts (see Docket Entry 130-1 at 11). Even if established, Defendant's previous production would, at most, merit modifying the subpoenas as to some of the analysts; however, in light of the lack of objection from the subpoena recipients (and the production by at least one analyst of responsive documents (see Docket Entry 135-7 at 2)), considerations of judicial economy and efficiency militate against modifying the

13

subpoenas for a subset of the recipients, which (counterintuitively and counterproductively) could instead impose a burden by requiring them to revisit their collection and production efforts.

Finally, the Supporting Memorandum argues that the subpoenas violate "a discovery agreement limiting email collection to ten custodians." (Docket Entry 130 at 5.) The Court does not find this last argument persuasive, for two reasons. First, any such agreement does not obviously prohibit third-party discovery. And second, as Plaintiff relates in the Response, when reaching that agreement, Plaintiff "ha[d] no idea which [Defendant] employees ha[d] contacted the stock analysts, so it [could not have] name[d] them." (Docket Entry 135 at 11.) Given the relevance to determining a reasonable royalty and the lack of burden to the analysts (as evidenced by their absence from this dispute), the Court would not read the parties' discovery agreement so broadly as to preclude the third-party discovery at issue here.

In sum, the Court concludes that "the proposed discovery is [within] the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Put another way, "the burden or expense of the proposed discovery [does not] outweigh[] its likely benefit." Nexus Servs., 2022 WL 1597840, at *5. The Court will therefore deny the Analyst Motion.[4]

---

4 In light of this ruling, fee-shifting applies under Federal Rule of Civil Procedure 37. See Fed. R. Civ. P. 26(c)(3). Under that Rule, the Court "must . . . require the movant . . . to pay

14

### III. Sealing Materials

Plaintiff filed a Motion to Seal regarding one redacted footnote in its Response, as well as four exhibits attached thereto. (See Docket Entry 136 at 2.) Defendant filed a Motion to Seal addressing one passage in its Reply, as well as two attached exhibits. (See Docket Entry 147 at 2.) Plaintiff included the redacted footnote, as well as the exhibits, to support its argument that the subpoenas targeted information relevant to the issue of impeaching Defendant, and Plaintiff contends that impeachment represents "an issue relevant in every case." (Docket Entry 135 at 7.) The redacted material in Defendant's Reply addressed the same subject matter. (See Docket Entry 146 at 12-13.) However, the Court resolved the Analyst Motion on the grounds that the subpoenas sought information relevant to the issue of a reasonable royalty; it did not consider the additional argument for relevance as it relates to impeachment. Accordingly, the redacted materials in Plaintiff's Response and Defendant's Reply "did not play any role

---

the [nonmovant] its reasonable expenses incurred in opposing the motion, . . . [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P 37(a)(5)(B). Given that Defendant generally made reasonable arguments about relatively novel issues, the Court concludes Defendant's litigation of the Analyst Motion "was substantially justified," id.; see also Decision Insights, Inc. v. Sentia Grp., Inc., 311 F. App'x 586, 599 (4th Cir. 2009) ("A legal position is substantially justified if there is a genuine dispute as to proper resolution or if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." (internal quotation marks omitted)), and therefore the Court "must not order [fee-shifting]," id.

15

in th[is Court's] adjudication [of the Analyst Motion]," <u>In re Pol'y Mgmt. Sys. Corp.</u>, Nos. 94-2254, 2341, 67 F.3d 296 (table), 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995), and may therefore remain under seal, <u>see id.</u>  The Court thus grants both Motions to Seal.

## IV. Conclusion

Plaintiff's subpoenas to the financial analysts seek information relevant to reasonable royalty damages, proportional to the needs of the case, and further impose no undue burden on Defendant, or anyone else.

**IT IS THEREFORE ORDERED** that the Analyst Motion (Docket Entry 129) is **DENIED** and the Motions to Seal (Docket Entry 136; Docket Entry 147) are **GRANTED.**

This 3rd day of July, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
