## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE TRUSTEES OF            )
PURDUE UNIVERSITY,         )
                           )
            Plaintiff,     )
                           )
      v.                   )        1:21cv840
                           )
WOLFSPEED, INC.,           )
                           )
            Defendant.     )

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant's Motion for Protective Order (Docket Entry 131 (the "Apex Motion"); see also Docket Entry 132 ("Supporting Memorandum")), to which Plaintiff responded (Docket Entry 139) and Defendant replied (Docket Entry 149). The parties also filed related sealing materials. (See Docket Entries 140-141, 145.) For the reasons that follow, the Court grants the Apex Motion and grants in part and denies in part the request for sealing.

### I. Background

This patent infringement suit targets Defendant's manufacture of "certain silicon carbide metal oxide semiconductor field effect transistors (SiC MOSFETs)." (Docket Entry 88 at 2 (recounting factual background in prior Order).) Separately, Defendant has challenged the patent at issue here (by means of Inter Partes Review ("IPR") petition) before the Patent Trial and Appeal Board ("PTAB"), a tribunal within the United States Patent and Trademark

Office ("USPTO").  (See Docket Entry 132 at 6.)  There, the PTAB declined to institute proceedings in response to Defendant's petition, and Defendant subsequently requested that the PTAB reconsider that decision.  (See id. at 6-7.)

On March 30, 2023, the USPTO Director granted *sua sponte* review of the PTAB's decision (denying institution of proceedings), vacated the PTAB's decision, and remanded the matter to the PTAB. (See Docket Entry 132-1 at 2, 10.)  Two days prior to the USPTO Director's order, President Joseph R. Biden visited Defendant's headquarters in Durham, North Carolina.  (See Docket Entry 132-2 at 2-3.)  Defendant's Chief Executive Officer ("CEO"), Gregg Lowe, led President Biden on a tour of Defendant's facilities (see Docket Entry 132-4 at 2), and both President Biden and Lowe made public remarks regarding Defendant's planned investment for a new research and development facility (see Docket Entry 132-3 at 2-3).  No record evidence reflects that President Biden and Lowe discussed this lawsuit, or Defendant's petition before the PTAB.  Similarly, the record lacks any indication that President Biden (or anyone acting on his behalf) communicated with the USPTO Director during the 48 hours between his visit to Durham and her decision to *sua sponte* vacate the PTAB denial of institution.

The same day the USPTO Director issued her order, counsel for Plaintiff contacted Defendant, stating, "[g]iven the circumstances

now, [Plaintiff] demands the deposition of [] Lowe." (Docket Entry 132-5 at 7.) Plaintiff's counsel went on to assert that:

> [A] reasonable person [would] believe that [] Lowe engaged in lobbying President Biden to interfere in the IPR on [Defendant]'s behalf. It is no coincidence that [] Lowe and President Biden were together . . ., then three days later [the USPTO] Director [] reaches down and interferes in the IPR . . . . We intend to take [] Lowe's deposition on the efforts to politically interfere in the IPR process and lobby President Biden and others who accompanied him on that trip.

(Id.) Several days later, after Defendant's counsel expressed opposition to Plaintiff's foregoing rationale for Lowe's deposition (see id. at 5), Plaintiff's counsel added that, beyond the IPR proceedings, the deposition would address Lowe's communications with "multiple stock analysts" (id. at 3), as well as his participation on "investor calls" (id.). Those two activities, according to Plaintiff's counsel, made Lowe "a fact witness as to forecasts, the importance of the SiC MOSFET business to [Defendant] strategically, the false/misleading reporting of SiC wafer yields to analysts, the false/misleading reporting on design wins to analysts and other topics core to damages and the Read[] factors for enhancement." (Id.)[1]

---

[1] "The paramount determination in deciding to grant enhancement [of damages for patent infringement] and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992) (cataloging nonexclusive list of factors that bear on enhancement of damages, including the Bott factors (see Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986)), as well as infringer's "size and financial condition," "closeness of the case," the "[d]uration of [] misconduct," any

3

On May 5, 2023, Plaintiff served a deposition notice for Lowe. (Docket Entry 132 at 9-10.)  The parties met and conferred, but reached an impasse.  (See Docket Entry 131 at 4.)  Accordingly, Defendant filed the Apex Motion requesting a protective order "precluding the deposition of [] Lowe and [] award[ing Defendant] reasonable fees and costs in connection with [the Apex M]otion." (Id. at 1.)

## II. Discussion

Defendant makes several arguments in support of the protective order requested in the Apex Motion.  First, invoking the "Apex Doctrine," the Supporting Memorandum contends that Lowe's deposition should not proceed because he, as a high level corporate executive, lacks the requisite unique or special knowledge of relevant facts so as to justify the attendant burden that accompanies depositions of corporate leaders.  (See Docket Entry 132 at 10-13.)[2]  In that regard, the Supporting Memorandum argues that Lowe "has never been directly involved in [Defendant]'s development, manufacture, sale, or distribution of the accused products[,] has [ n]ever communicated with [Plaintiff] about this

---

"[r]emedial action," the "motivation for harm," and whether the infringer "attempted to conceal its misconduct").

2 Pin cites to the Supporting Memorandum refer to the page numbers that appear in the footer appended to the Supporting Memorandum upon its docketing in the CM/ECF system (and not to any internal pagination which blends roman and arabic numerals).

lawsuit[, and] has no specific knowledge concerning [Plaintiff]'s allegations or [Defendant]'s defenses." (Id. at 11.)

Next, the Supporting Memorandum describes Plaintiff's allegations of political collusion as "absurd and baseless." (Id. at 13.) Defendant notes that "President Biden's tour of [Defendant]'s factory . . . was part of a pre-arranged visit[, and that] . . . [t]here is no evidence that any discussion took place between President Biden and [Defendant] regarding [Defendant]'s IPR, the '633 patent, or this lawsuit." (Id. at 14.) The Supporting Memorandum adds that, "[e]ven if [Plaintiff]'s accusations had any factual support . . ., they are entirely irrelevant to this lawsuit." (Id.)

Finally, the Supporting Memorandum asserts that Plaintiff has had ample opportunity to depose Defendant employees regarding its public disclosures concerning business performance. (See id. at 15.) To that point, the Supporting Memorandum details that "[Plaintiff] deposed . . . [Defendant]'s Vice President of Investor Relations and corporate designee for investor-related topics, . . . [as well as Defendant]'s Director of Finance in the Power division, [ Defendant]'s corporate designee for sales-related topics for the accused products." (Id. at 16.) Further, the Supporting Memorandum notes that "[Plaintiff] has not completed its depositions of [Defendant]'s corporate witnesses designated for the[ same or similar] topics [for which Plaintiff seeks to depose

5

Lowe], and multiple [Defendant] corporate witnesses remain to be deposed." (Id. at 17.)

Plaintiff's Response argues that Lowe "possesses unique and personal knowledge relevant to Plaintiff's induced infringement claims and to the determination of reasonable royalty damages." (Docket Entry 139 at 4.)[3]  In that regard, the Response states that:

> Lowe (a) has been personally involved in meetings with potential customers making procurement decisions, (b) meets regularly with major customers, (c) makes personal judgments about the markets for Wolfspeed's SiC products accused of infringement, and (d) personally encourages major partners like Arrow and GM to use or sell Wolfspeed's products accused of infringement.

(Id. at 6 (internal quotation marks omitted).)

The Response also asserts that "[t]he Fourth Circuit has not adopted [the Apex Doctrine], but even if it had, Lowe indisputably has unique knowledge relevant to induced infringement due to his extensive personal dealings with [Defendant's] customers and partners." (Id. at 9.)  The Response adds that "Lowe personally led [Defendant]'s 2022 Investor Day conference and personally narrated [Defendant]'s Investor Day presentation on multiple topics highly relevant to the issues in this case." (Id. at 11.)

_____

3 Pin cites to the Response refer to the page numbers that appear in the footer appended to the Response upon its docketing in the CM/ECF system (and not to any internal pagination which blends roman and arabic numerals).

6

Lastly, the Response confirms that Plaintiff also seeks Lowe's deposition "to determine whether Lowe may have used political influence to revive [Defendant]'s failed IPR challenge to the '633 Patent." (Id. at 17.) According to the Response, "the circumstantial evidence of political interference is compelling" (id.), in part because "North Carolina is a hotly contested swing state in the 2024 presidential election[, and i]t is not beyond belief that President Biden or his campaign would be receptive to helping [Defendant] in the IPR in exchange for political support" (id. at 18).

In reply, Defendant counters that "[Plaintiff] merely recites a list of activities in which [] Lowe participates in his role as [] CEO, without explaining how those activities meet [Plaintiff]'s burden to show that [] Lowe has unique knowledge of relevant facts." (Docket Entry 149 at 6.)[4] The Reply continues that Plaintiff has also deposed two of Defendant's corporate witnesses who oversee "sale and distribution of the accused products" (id. at 10), further rendering a deposition of Lowe on those topics unnecessary (see id.). As a final matter, the Reply describes Plaintiff's allegations of circumstantial evidence of political

_____

4 Pin cites to the Reply refer to the page numbers that appear in the footer appended to the Reply upon its docketing in the CM/ECF system (and not to any internal pagination which blends roman and arabic numerals).

7

collusion as "baseless, outrageous, and grossly inappropriate." (Id. at 5.)

The relevant legal standard provides that "[a] party or any person from whom discovery is sought may move for a protective order . . . in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1). "In order to obtain a protective order, the [movant] must demonstrate good cause." Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991). Good cause includes "protect[ing] a party [] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In seeking a protective order, "[t]he burden is on the party resisting discovery to explain specifically why its objections . . . are proper given the broad and liberal construction of federal discovery rules." Desrosiers v. MAG Indus. Automation Sys., LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

Some courts in the Fourth Circuit (and elsewhere) modify the standard for a protective order when the dispute involves the deposition of a high ranking corporate officer. Such modification involves application of the Apex Doctrine, which recognizes a "rebuttable presumption that the deposition of a high-ranking corporate executive . . . constitutes good cause for [a protective] order as an annoyance or undue burden within the meaning of [Federal] Rule [of Civil Procedure] 26(c)(1)." Performance Sales & Mktg. LLC v. Lowe's Companies, Inc., No. 5:07-CV-140, 2012 WL

4061680, at *4 (W.D.N.C. Sept. 14, 2012) (internal quotation marks omitted). The Apex Doctrine prescribes that, "before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." Smithfield Bus. Park, LLC v. SLR Int'l Corp., No. 5:12-CV-282, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (internal quotation marks omitted). "Application of the [A]pex [D]octrine is [] significant because it reallocates the burden that accompanies a motion for protective order." In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig., No. MDL 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014).

"[T]he [United States Court of Appeals for the] Fourth Circuit has neither adopted, nor rejected, the [A]pex [D]octrine." Cunagin as Next friend of J.C. v. Cabell Huntington, Hosp., Inc., No. 3:19-CV-250, 2021 WL 1518877, at *4 (S.D.W. Va. Apr. 16, 2021). More importantly, the Apex Doctrine "is bottomed on the apex executive lacking *any* knowledge of the relevant facts." Paice, LLC v. Hyundai Motor Co., No. 12-CV-499, 2014 WL 3613394, at *1 (D. Md. June 27, 2014) (emphasis in original). Thus, "the [A]pex [D]octrine, whatever its authority, does not prohibit the deposition of executives who have personal knowledge relevant to the parties' claims and defenses." Duke Energy Carolinas, LLC v.

NTE Caroinas II, LLC, No. 3:19-CV-515, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021).

Putting aside the interplay of the Apex Doctrine and the general standard for protective orders under Federal Rule of Civil Procedure 26(c), the Court retains an independent obligation to "limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). This Rule takes into account "the simple fact that [just because] requested information is discoverable under Rule 26(a) does not mean that discovery must be had." Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004). Where a plaintiff has already conducted depositions of a defendant's corporate representatives on certain topics, permitting a subsequent deposition of the defendant's CEO on the same or similar topics "would be unreasonably cumulative or duplicative." E.E.O.C. v. Freeman, No. 09-CV-2573, 2012 WL 2370122, at *2 (D. Md. June 21, 2012) (granting protective order to preclude deposition of defendant CEO without consideration of Apex Doctrine); see also Nicholas, 373 F.3d at 543 (citing Federal Rule of Civil Procedure 26(b)(2)(C) and affirming district court's denial of corporate deposition of third-party company where defendant had already deposed plaintiff owners of company and company "ha[d] no more

information about the facts of liability and damages than [p]laintiffs themselves had").

In this case, "[r]egardless of whether or not the [A]pex [D]octrine is adopted in the Fourth Circuit, the issues surrounding Plaintiff['s] notice to depose [Lowe] can be resolved by considering the proportionality principles of Rule 26(b)(2)(C)." In re C. R. Bard, 2014 WL 12703776, at *4; see also United States ex rel. Galmines v. Novartis Pharms. Corp., No. 06-CV-3213, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015) (describing Apex Doctrine as "merely a tool for guiding the [c]ourt's analysis in determining whether to limit discovery under [Federal] Rule [of Civil Procedure] 26(b)(2)(C) because the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive"); Performance Sales, 2012 WL 4061680, at *4 (offering same description). In considering those principles of proportionality, the Court concludes that the record does not establish "that [Lowe's] corporate knowledge is so special or unique or that [Plaintiff] cannot obtain the information [it] seek[s] by deposing [Defendant]'s 30(b)(6) witnesses." Cross by & Through Steele v. XPO Express, Inc., No. 4:15-CV-2480, 2017 WL 10544634, at *2 (D.S.C. May 8, 2017); see also Dixon v. Foot Locker Inc., 623 F. App'x 594, 595 (4th Cir. 2015) (affirming district court's denial of plaintiff's motion to compel deposition of defendant CEOs where plaintiff "failed to establish that the CEOs

11

had any direct or specialized knowledge relevant to the elements of his claims"); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (affirming trial court order barring deposition of defendant CEO at least until plaintiff deposed defendant employees with more "direct knowledge of the relevant facts"); Baine v. Gen. Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991) (quashing deposition of executive where subordinate employees possessed equal or superior knowledge of relevant facts and "corporate deposition ha[d] not yet been taken").

To support Plaintiff's allegations that Lowe possesses relevant knowledge related to the induced infringement claim, the Response includes several excerpts from Defendant's earnings calls. (See Docket Entry 139 at 6-8.) But these quoted excerpts contain only general statements from Lowe that he "meet[s] with customers" (id. at 6), "[is] personally involved in a lot of customer meetings" (id. at 7), has "met with several important customers" (id.), and has "been on calls with many different customers" (id.). The record does not indicate the identity of the customers,[5]

_____

5 As for specific customers, the Response contends that Lowe "personally encourages major partners like Arrow and GM to use or sell Wolfspeed's products accused of infringement." (Docket Entry 139 at 6.) But, far from demonstrating personal encouragement, the Response's included quotes from Lowe state only that Defendant and Arrow "feel real good about where [they]'re going" (id. at 8), and that Lowe "was in Detroit" to visit with GM and "prepar[e] for [a press release announcing a deal]" (id.). To the extent Plaintiff contends Arrow or GM have procured infringing products from Defendant, the Response includes no indication that Lowe played any role in those procurements. (See generally id. at 6-8, 10.)

whether those customers sought products that Plaintiff has alleged infringe the '633 patent, whether those customers in fact purchased any products that Plaintiff has alleged infringe the '633 patent, that Lowe has any specialized knowledge of the '633 patent, or that, armed with such knowledge of the '633 patent, Lowe encouraged these customers to purchase Defendant's products; those deficiencies undercut Plaintiff's asserted need for Lowe's testimony, see Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015) (holding that "liability for inducing infringement attaches only if the defendant knew of the patent"); Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011) (holding that "induced infringement . . . requires knowledge that the induced acts constitute patent infringement").

Moreover, nearly all of the earnings calls Plaintiff suggests show Lowe's knowledge as it relates to induced infringement in fact *predate* Plaintiff's notice letter to Defendant regarding the '633 patent (compare Docket Entry 83 at ¶ 2676 (Third Amended Complaint stating that, "[i]n April 2021, [Plaintiff] sent [Defendant] a notice letter informing [Defendant] of its infringement of the '633 Patent"), with Docket Entry 139 at 6-7 (reflecting earnings calls from Q2 2018, Q1 2020, Q2 2020, Q3 2020, Q4 2020, and Q1 2022)), meaning that those calls could not, as a matter of law, serve as evidence of Defendant's knowledge for purposes of the induced infringement claim here, see Dali Wireless, Inc. v. Corning Optical

Commc'ns LLC, No. 20-CV-06469, 2022 WL 17178308, at *8 (N.D. Cal. Nov. 23, 2022) (citing Commil in granting summary judgment to defendant on plaintiff's induced infringement claim because defendant only learned of patent "22 days before [plaintiff] asserted it in its [f]irst [a]mended [c]omplaint"); see also Memory Integrity, LLC v. Intel Corp., No. 3:15-CV-00262, 2015 WL 4251026, at *2 (D. Or. July 13, 2015) (holding that "[s]ervice of the complaint provides the defendant with notice of the patent's existence"). As a result, the Response falls short in attempting to demonstrate that Lowe "possesses unique and personal knowledge relevant to Plaintiff's induced infringement claims." (Docket Entry 139 at 4.)

The Response also contends that Lowe has knowledge bearing on "the determination of reasonable royalty damages" (id.), by virtue of the fact that he "personally led [Defendant]'s 2022 Investor Day conference and personally narrated [Defendant]'s Investor Day presentation on multiple topics highly relevant to the issues in this case" (id. at 11). In particular, the Response alleges that "the figures Lowe provided in the Investor Day presentation do not appear to match the internal forecasts for [Defendant]" (id.), and that "Lowe knows the factual bases for the discrepancies in the public and internal pronouncements on [Defendant]'s ability to meet its sales, revenue, gross margin, and profit forecasts" (id. at 12). But these contentions, too, do not suffice because they

14

require the inference that, merely because a CEO "personally" leads a conference or "personally" narrates a presentation, that individual possesses personal knowledge of all the data comprising that presentation or conference. The size of Defendant's organization, as well as its designation of multiple representatives to address the 54 topics included in Plaintiff's corporate deposition notice to Defendant (see Docket Entry 113 at 16; Docket Entry 133-8 at 6-11 (sampling of topics)), does not warrant such an inference in this case.

More importantly, even if Plaintiff could show that Lowe possessed knowledge relevant to induced infringement or reasonable royalty damages, the record nonetheless supports entry of a protective order to prevent "unreasonably cumulative or duplicative [discovery], or [discovery which could] be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i). As Defendant relates, Plaintiff has already deposed Defendant's Vice President of Investor Relations, Defendant's Director of Finance, Defendant's Vice President & General Manager of Power Die Products, and Defendant's Vice President & General Manager of Power Modules. (See Docket Entry 133 at 16; Docket Entry 149 at 10.) In addition, "multiple [Defendant] corporate witnesses remain to be deposed" (Docket Entry 133 at 17), with topics to include "the content, accuracy, and truthfulness of [Defendant's Investor Day]

Presentation" (id. at 16), as well as "Defendant's marketing and financial plans, market studies, reports, forecasts, surveys, strategies, and projections for the sale, use, or monetization of SiC MOSFET Products" (id. at 16-17). Nowhere does the Response suggest that Defendant's corporate representatives have failed to meet their obligation to "testify about information known or reasonably available to the organization," Fed. R. Civ. P. 30(b)(6), and absent such evidence, the Court will not permit duplicative and cumulative discovery, particularly not by deposition of a party's CEO, see Salter, 593 F.2d at 651; Freeman, 2012 WL 2370122, at *2; Baine, 141 F.R.D. at 335.

Taken together, "the record before the Court at this time does not show under [Federal] Rule [of Civil Procedure] 26(b)(2)(C) that [Lowe] possesses any special knowledge that could not be obtained from a source that is more convenient, less burdensome, or less expensive." Cross, 2017 WL 10544634, at *2. Moreover, "Plaintiff has already taken [or will take multiple Federal] Rule [of Civil Procedure] 30(b)(6) deposition[s] of Defendant's designated representative[s], [and] . . . [t]he topics about which Plaintiff would question [Lowe] seem to be the same as those already covered [or to be covered] in these [30(b)(6)] depositions." Freeman, 2012 WL 2370122, at *2.

The foregoing analysis leaves Plaintiff's claimed entitlement to depose Lowe in order "to determine whether [he] may have used

16

political influence to revive [Defendant]'s failed IPR challenge to the '633 Patent." (Docket Entry 139 at 17.) The Court declines to authorize Lowe's deposition on that ground. To start, the circumstantial evidence Plaintiff terms "compelling" (Docket Entry 139 at 17) does not bear scrutiny. Under Plaintiff's thesis, President Biden would have arrived in Durham for a series of primarily public events, privately engaged with Lowe about a very technical matter involving an obscure federal office (the USPTO), agreed to influence the Director of the USPTO in exchange for unspecified support, subsequently communicated (or caused someone else to communicate) with the USPTO Director, and compelled her to pen a 10-page order, all within the span of 48 hours.[6] The Court does not deem that highly speculative chain of supposition sufficiently plausible to support Lowe's deposition. Finally, even assuming that Plaintiff's allegations on this front rested on a more reliable foundation, Plaintiff has not shown what relevance the PTAB proceedings hold for this case, and has not made any argument in support of the notion that investigating political collusion at the USPTO could possibly uncover evidence "that is relevant to any party's claim or defense and proportional to the

---

6 Plaintiff states that "the PTO Director Review decision in this case came three days after President Biden met with Lowe" (id.), but President Biden met with Lowe on March 28, 2023, and the USPTO Director issued her order on March 30 (see Docket Entry 132-1 at 2), a span of only two days.

17

needs of th[is] case," Fed. R. Civ. P. 26(b)(1). (See Docket Entry 39 at 14-15.)

In sum, the record lacks evidence that Lowe possesses personal knowledge relevant to Plaintiff's claim for induced infringement, or reasonable royalty damages. Additionally, even if Lowe did possess such knowledge, Plaintiff's depositions of other of Defendant's executives and corporate representatives on those same topics would render the deposition of Lowe "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i). As a final matter, Plaintiff's expressed interest in deposing Lowe regarding an unsupported corrupt bargain with President Biden with no identified impact on the litigation of this case does not satisfy basic relevance and proportionality standards. Accordingly, the Court will prohibit Lowe's deposition under Federal Rule of Civil Procedure 26(b)(2)(C), and also find that Defendant has established good cause for a protective order under Federal Rule of Civil Procedure 26(c). As a result, the Court grants the Apex Motion, and (finding neither substantial justification for Plaintiff's position nor any other circumstances that would render expense-shifting unjust) will require Plaintiff to pay the reasonable expenses Defendant incurred in litigating the Apex Motion, see Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(A).

18

## III. Sealing Materials

Plaintiff filed a Motion to Seal regarding one redacted footnote in its Response, as well as six exhibits attached to the Response. (See Docket Entry 140 at 2.) The exhibits consist of five deposition transcripts, as well as one financial report Defendant produced in discovery. (See id.) The redacted excerpts from Plaintiff's Response include quotes from the aforementioned exhibits. (See id.) Defendant filed a Brief in Support of the Motion to Seal, explaining that the redacted materials contain "[Defendant]'s sales and business information, and reference[] sales and financial data in Highly Confidential documents that [Defendant] produced in this litigation." (Docket Entry 145 at 2.)

"[C]ourts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978). "The right of public access derives from two independent sources: the First Amendment and the common law." In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013). "The Fourth Circuit has not clarified which right of access, or if any right of access, attaches to documents filed with non-dispositive pretrial motions, such as documents related to discovery motions." Smithkline Beecham Corp. v. Abbott Lab'ys, No. 1:15CV360, 2017 WL 11552659, at *3 (M.D.N.C. Mar. 7, 2017). Even so, the Fourth Circuit has suggested that "the First Amendment guarantee of access should not

19

be extended to documents filed in connection with a motion [that] . . . do[es] not serve as a substitute for a trial." In re Pol'y Mgmt. Sys. Corp., Nos. 94-2254, 2341, 67 F.3d 296 (table), 1995 WL 541623, at *3 (4th Cir. Sept. 13, 1995). Accordingly, the Court does not consider the First Amendment right of access to attach to the materials here.

Assuming, then, that the common law right of access applies, Defendant must present "a significant countervailing interest in support of sealing that outweighs the public's interest in openness." In re Ord., 707 F.3d at 293. Based on its review of the sealed materials, the Court concludes that Defendant has made that showing with regard to Exhibits 1, 2, and 20 (Docket Entry 139-1; Docket Entry 139-2; Docket Entry 139-20), as well as quotes from those Exhibits in the Response, based in part on its representation to the Court that the materials contain highly confidential business and financial information, see Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 730 (M.D.N.C. 2013). In addition, as another judge of this Court concluded based on similar representations, the Motion to Seal:

> [is] primarily directed towards keeping confidential certain marketing, sales, and [financial] information which is not ordinarily public. The competitive and financial interest of [Defendant] would be harmed by public disclosure. There is no evidence that [Defendant] seek[s] to protect this information for any improper purpose.

Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656–57 (M.D.N.C. 2013) (internal citation omitted). Similarly

here, Defendant's business interests would suffer harm by public disclosure, and Defendant represents to the Court that "[t]he[] redactions are not being made unnecessarily, but are narrowly limited to [Defendant]'s confidential and sensitive business information." (Docket Entry 145 at 3.)

On the other hand, Exhibits 3, 4, and 5 (Docket Entry 139-3; Docket Entry 139-4; Docket Entry 139-5), as well as quotes from those Exhibits in the Response, contain no sensitive business information of Defendant. Defendant has therefore failed to present "a significant countervailing interest in support of sealing," In re Ord., 707 F.3d at 293. Accordingly, the Court will grant in part and deny in part the Motion to Seal, in that Exhibits 1, 2, and 20 (and any quotes from those Exhibits in the Response) may remain under seal, but Exhibits 3, 4, and 5 (and any quotes from those Exhibits in the Response) should not remain sealed.[7]

### IV. Conclusion

The record lacks a sufficient basis on which to permit the deposition of Defendant's CEO, and any such deposition would

---

[7] Even if no public right of access attached to the discovery materials subject to the Motion to Seal, see Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV00918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010), Defendant would "still [have to] show 'good cause' under [Federal] Rule [of Civil Procedure] 26(c) to secure [] special handling procedures for these materials," id. Accordingly, the Court would employ similar analysis, and reach an identical result.

duplicate discovery Plaintiff has obtained or readily could obtain in a less burdensome manner.

**IT IS THEREFORE ORDERED** that the Apex Motion (Docket Entry 131) is **GRANTED** and the Motion to Seal (Docket Entry 140) is **GRANTED IN PART** and **DENIED IN PART**, in that:

1) Lowe's deposition notice is **STRICKEN** and Plaintiff shall pay Defendant's reasonable expenses, including attorney's fees, incurred in litigating the Apex Motion;

2) Docket Entry 139-1, Docket Entry 139-2, and Docket Entry 139-20, as well as any references from those Exhibits in the Response (Docket Entry 139), may remain under seal;

3) Docket Entry 139-3, Docket Entry 139-4, and Docket Entry 139-5, as well as any references from those Exhibits in the Response, are unsealed;

4) Plaintiff shall, by July 19, 2023, resubmit its Response in accordance with the sealing/redaction specifications set forth in this Order.

5) by July 19, 2023, Defendant shall serve Plaintiff with a statement of the reasonable expenses, including attorney's fees, Defendant incurred in litigating the Apex Motion;

6) by July 26, 2023, counsel for the parties shall confer in-person or by video-teleconference regarding any dispute as to the reasonableness of the expenses claimed by Defendant; and

7) if, by July 27, 2023, the parties have not filed a joint notice confirming their resolution of all issues regarding the reasonableness of the amount of expenses claimed by Defendant, the Court will resolve any remaining disputes at a hearing at 10:30am, on July 31, 2023, in Courtroom 1A of the L. Richardson Preyer United States Courthouse, Greensboro, North Carolina.

This 17th day of July, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
