# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE TRUSTEES OF
PURDUE UNIVERSITY,

Plaintiff,

v.

WOLFSPEED, INC.,

Defendant.

Civil Action No. 1:21-CV-840

REDACTIONS IN THIS PUBLIC
DOCUMENT ARE TO PROTECT
INFORMATION SEALED BY COURT
ORDER AT ECF DOCKET NO. 152

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Plaintiff respectfully objects to portions of the Magistrate Judge's July 17, 2023 Memorandum Opinion and Order (Dkt. 152) (the "Order"). Specifically, and for the reasons explained in detail below, Plaintiff objects to the portions of the Order that address and grant Defendant's Motion for Protective Order regarding the deposition of Gregg Lowe, including the requirement that Plaintiff pay Defendant's reasonable expenses. (*See* Dkt. 152 at 1-18, 21-23.) Plaintiff does not object to the portions of the Order related to the sealing of certain records filed with the Court. (*See id.* at 19-23.)

## Nature of the Matter Before the Court and Factual Background

Plaintiff brought this lawsuit to protect its rights under U.S. Patent No. 7,498,633 (the "'633 Patent"), alleging that Defendant is engaged in willful infringement of the '633 Patent

by making and selling, and inducing others to sell and use, the accused silicon carbide ("SiC")
products.  (*See* Dkt. 83.)  Gregg Lowe joined Defendant's predecessor (Cree, Inc.) as CEO in
2017, when its business included LED and other lighting products.  (*See, e.g.*, Dkt. 139-6 at
4-8 (describing various product lines and Mr. Lowe's arrival at the company).)  Because Mr.
Lowe ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████, and because
of his participation in day-to-day operations, including marketing and selling the Accused
Products, Plaintiff sought his deposition.  (Dkt. 141 at 6-10 (explaining multiple bases for Mr.
Lowe's deposition).)

As noted in the Order, a deposition notice was served on May 5, 2023.  (Dkt. 152 at
4.)  The parties conferred regarding the deposition of Mr. Lowe but were unable to reach a
resolution.  (*Id.*)  Accordingly, on June 2, 2023, Defendant filed a Motion for Protective Order
to preclude the deposition of Mr. Lowe.  (*See* Dkt. 131.)  On July 17, 2023, the Magistrate
Judge issued the Order which, among other things, granted Defendant's Motion for Protective
Order, struck the deposition notice, and required Plaintiff to pay Defendant's reasonable
expenses incurred in litigating the Motion for Protective Order.  (*See* Dkt. 152.)

## Standard of Review

Under Rule 72, a party has fourteen days to object to a magistrate judge's decision
regarding a non-dispositive pretrial matter.  *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. §
636(b)(1)(A).  The District Court must consider properly filed objections and modify or set
aside any part of the magistrate judge's order that is "clearly erroneous or is contrary to law."

*Id.* While the District Court's review may be deferential, it is "not toothless." *Butts v. U.S.*, 930 F.3d 234, 238 (4th Cir. 2019). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Sandoval v. Starwest Servs., LLC*, No. 1:17-cv-01053, 2018 WL 2426269, at *1 (E.D. Va. Feb. 16, 2018) (citation omitted).

### Law Applicable to Motions for Protective Order

Any party from whom a deposition is sought may move for a protective order in the court for the district where the deposition will be taken. *See* Fed. R. Civ. P. 26(c)(1). To obtain a protective order, the moving party "must demonstrate good cause." *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991). Good cause includes protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden is on the party opposing the deposition (i.e., the moving party) to demonstrate why it is improper, given the broad and liberal construction afforded the discovery rules. *See, e.g.*, *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009). In seeking a protective order, the moving party cannot rely on "conclusory or speculative statements" in support of its motion. *Brittain*, 136 F.R.D. at 412. Instead, evidence is required, as the party resisting the deposition must make "a specific demonstration of facts … about the need for a protective order and the harm [that] would be suffered without one." *Id.* This demonstration preferably is made "through affidavits from

3

knowledgeable persons." *Id.* at 412-13. If the moving party fails to meet this burden, the motion for protective order should be denied. *See id.*

Some courts modify this standard when the deposition of a top corporate official has been requested by applying the apex doctrine, which recognizes a rebuttable presumption that good cause exists to prohibit the deposition. *See Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-cv-140, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012) (discussing but declining to adopt the apex doctrine). Under the apex doctrine, the challenged deposition can go forward only if the party seeking the deposition shows (1) that the witness has unique or special knowledge of the facts at issue and (2) that other less burdensome avenues for obtaining the information sought have been exhausted. *See id.* "Application of the apex doctrine is … significant because it reallocates the burden that accompanies a motion for protective order." *In re C.R. Bard, Inc.*, MDL No. 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014). Importantly, the Fourth Circuit has never adopted the apex doctrine. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009) ("The Fourth Circuit has never discussed, much less adopted, an apex deposition rule."); *see also Cunagin v. Cabell Huntington Hosp., Inc.*, No. 3:19-cv-250, 2021 WL 1518877, at *4 (S.D.W. Va. Apr. 16, 2021); *In re C.R. Bard*, 2014 WL 12703776, at *2. Neither has the Middle District of North Carolina. (*See generally* Dkt. 152 (citing apex doctrine cases from various jurisdictions, but not from this Court).)[1]

---

[1] A Westlaw search for "apex doctrine" currently returns only one decision from the Middle District of North Carolina – the Order.

4

<u>**Explanation of Objections**</u>

Plaintiff respectfully submits that the Magistrate Judge's Order is clearly erroneous and contrary to law in at least three respects. First, the Magistrate Judge erred by imposing standards required only under the apex doctrine, including shifting the burden to Plaintiff. Second, the Magistrate Judge erred by finding good cause to prohibit the deposition, as Mr. Lowe possesses knowledge important to multiple disputed issues in this case. And third, the Magistrate Judge erred by requiring Plaintiff to pay Defendant's reasonable expenses associated with its motion to prevent the deposition of Mr. Lowe. Because of these errors, Plaintiff requests that the Order be set aside. Each error is addressed in turn below.

**I.**      <u>**The Magistrate Judge Erred Because the Standards He Imposed Are Required Only Under the Apex Doctrine**</u>

Although the Order discusses the apex doctrine at length – including that it has not been adopted by the Fourth Circuit – the Magistrate Judge ultimately decided to rely on the proportionality principles of Rule 26(b)(2)(C) to reach his decision.[2] (*See id.* at 9-11, 18.) In conducting his proportionality analysis, however, the Magistrate Judge improperly transferred the burden of proof to Plaintiff and required Plaintiff to satisfy elements that are required only under the apex doctrine. Thus, despite the Order's declaration to the contrary, the Magistrate Judge necessarily applied the apex doctrine in deciding this matter. For these reasons, Plaintiff asks that the Order be set aside as clearly erroneous and contrary to law.

---

[2] The Order states that the Magistrate Judge was "[p]utting aside" the apex doctrine for purposes of his analysis. (Dkt. 152 at 10.) Later in the Order, the Magistrate Judge states that his decision was reached "regardless of whether the apex doctrine is adopted in the Fourth Circuit." (*Id.* at 11 (cleaned up).)

## A.    The Magistrate Judge Improperly Placed the Burden on Plaintiff

The law is clear that when considering a motion for protective order to prevent a deposition, the burden lies with the party resisting the discovery. *See, e.g.*, *Desrosiers*, 675 F. Supp. 2d at 601.  Because such motions are disfavored by the courts, the movant's burden is a heavy one.  *Minter*, 258 F.R.D. at 124-25; *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987).  Application of the apex doctrine shifts the burden to the party who requested the deposition; but in the absence of the apex doctrine, the burden must remain with the party seeking a protective order.  *See In re C.R. Bard, Inc.*, 2014 WL 12703776, at *4. Stated differently, the burden belonged to Defendant.  *See id.*

In multiple instances, however, the Order improperly places the burden on Plaintiff. For example, after critiquing Plaintiff's explanation of Mr. Lowe's involvement in matters that are a proper subject of discovery, the Magistrate Judge stated that Plaintiff's brief "falls short in attempting to demonstrate that Lowe possess unique and personal knowledge relevant to Plaintiff's induced infringement claims."  (Dkt. 152 at 14 (internal quotation marks omitted).)  As noted above, Plaintiff would have a burden to demonstrate Mr. Lowe's unique and personal knowledge <u>only</u> if the apex doctrine applied.  *See Performance Sales*, 2012 WL 4061680, at *3 (discussing the apex doctrine elements that the party requesting the deposition must prove).  In contrast, under the proportionality analysis set forth in Rule 26, that is not a burden that Plaintiff must bear.  To the extent a burden existed to demonstrate the scope and nature of Mr. Lowe's knowledge, it was <u>Defendant's</u> to bear through the introduction of

6

evidence, not just argument. *Brittain*, 136 F.R.D. at 412 ("The burden of showing good cause rests with the party requesting the protective order.").

As another example, the Order states that a protective order is warranted because "the record lacks evidence that Lowe possess personal knowledge relevant to Plaintiff's claim for induced infringement, or reasonable royalty damages." (Dkt. 152 at 18.) Because the burden belonged to Defendant, it would have been Defendant's responsibility to show any lack of discoverable knowledge – not Plaintiff's responsibility to demonstrate the existence of knowledge.[3] *See Brittain*, 136 F.R.D. at 412. In meeting this burden, Defendant should have submitted affidavits or other evidence in support of its position. *Id.* at 412-13 (noting that the proof required of the party seeking a protective order is "preferably made by affidavits from knowledgeable persons"). Defendant made no such showing, a fact that Plaintiff pointed out in its brief – even saying that, at least to the political influence question, a sworn statement by Mr. Lowe would have ended the inquiry. (Dkt. 141 at 11, 14.) Given the Magistrate Judge's determination that the record was deficient, Defendant's Motion for Protective Order should have been denied. *See Brittain*, 136 F.R.D. at 412-13. By placing the blame on Plaintiff for the perceived lack of evidence, and issuing a protective order on that basis, the Magistrate Judge improperly shifted the burden to Plaintiff.

---

[3] Lack of knowledge is no reason to prohibit a deposition. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012) ("A claimed lack of knowledge, by itself, is insufficient to preclude a deposition." (cleaned up)). Even the cases relied upon by Defendant confirm that Plaintiff "is entitled to test the witness's lack of knowledge." *Performance Sales*, 2012 WL 4061680, at *4.

## B. The Magistrate Judge Erred by Requiring Plaintiff to Show Mr. Lowe's Unique Knowledge

As explained above, the Magistrate Judge states that his ruling is reached under "the proportionality principles of Rule 26(b)(2)(C)." (Dkt. 152 at 11.) The Magistrate Judge's ultimate decision is well summarized in a single sentence: "In considering those principles of proportionality, the Court concludes that the record does not establish that Lowe's corporate knowledge is so special or unique or that Plaintiff cannot obtain the information it seeks by deposing Defendant's 30(b)(6) witnesses." (*Id.* (cleaned up).) In requiring a showing by Plaintiff that Mr. Lowe possesses special or unique knowledge (before he is deposed to enable discovery of that knowledge), the Order improperly held Plaintiff to the rigors of the apex doctrine. In fact, the legal authority cited by the Magistrate Judge for this requirement is an apex doctrine case. (*See id.* (citing *Cross v. XPO Express, Inc.*, No. 4:15-cv-2480, 2017 WL 10544634 (D.S.C. May 8, 2017), which applies an "apex analysis" to reach its holding).)

The apex doctrine imposes a rebuttable presumption of good cause to preclude the deposition of a top corporate executive. *See Performance Sales*, 2012 WL 4061680, at *3 (explaining the elements yet avoiding application of the apex doctrine). This presumption can be overcome only if the party seeking the deposition demonstrates that the witness has "unique or special knowledge of the facts at issue" <u>and</u> that other less burdensome avenues for obtaining the information sought have been exhausted. *Id.* *See also RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-0066, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) (setting forth the elements of the apex doctrine). The requirement of unique or special knowledge exists to ensure that depositions of busy corporate executives are necessary, and not used "as

8

a litigation tactic to create undue leverage by harassing the opposition." *RLI*, 2020 WL 2311668, at *2. *See also Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334-35 (M.D. Ala. 1991) (discussing the purpose of the unique knowledge requirement under the apex doctrine); *Cross*, 2017 WL 10544634, at *1 (stating that the apex doctrine "is aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head – the top official, not because of any special knowledge of, or involvement in, the matter in dispute" (internal quotation omitted)). In contrast, absent application of the apex doctrine and under proper application of the Rule 26 proportionality analysis, there is no requirement of unique or special knowledge to justify taking a deposition, even a deposition of a corporate executive. Basic knowledge of discoverable matters relevant to the issues in dispute is sufficient. *See, e.g.*, *Apple*, 282 F.R.D. at 263 (noting that it is highly unusual for a court to prohibit a deposition absent extraordinary circumstances and stating that "[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition"). Because the Order requires Plaintiff to show unique or special knowledge – an element that does not apply without application of the apex doctrine – it is clearly erroneous and contrary to law.

C.     <u>Under the Law, Plaintiff's Representations to the Court Were Sufficient to Justify Mr. Lowe's Deposition</u>

With the burden properly on Defendant, and without the apex doctrine grafted into the Magistrate Judge's analysis, Plaintiff's representations regarding Mr. Lowe's knowledge, which were based largely on the sworn testimony of Defendant's witnesses, should have been enough to justify his deposition. Less than two years ago, the Western District of North

9

Carolina, in a case before the Honorable Kenneth Bell, provided a roadmap for considering executive-level depositions in the absence of the apex doctrine. *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 3:19-cv-0515, 2021 WL 5826786 (W.D.N.C. Dec. 8, 2021). Duke filed a motion for protective order seeking to prevent the depositions of its in-house counsel and its CEO. *Id.* at *1. Judge Bell limited the deposition of the in-house lawyer to protect privileged information and her work-product. *Id.* at *2. Regarding Duke's CEO, however, Judge Bell found that the deposition was proper and should go forward without any limitations beyond those provided in the Rules of Civil Procedure. *Id.* at *3. Judge Bell considered the apex doctrine but ultimately did not apply it. *Id.* Rather, he focused on NTE's stated bases for seeking the deposition. *Id.* (noting that, <u>according to NTE</u>, Duke's CEO monitored competition from NTE, met with prospective customers, approved contracts involved in the parties' dispute, and was present for meetings with the board of directors regarding such contracts). Importantly, because the burden belonged to Duke (as the party opposing the deposition), Judge Bell did not require NTE to prove anything. *Id.* Judge Bell instead held that "NTE's <u>representations</u> of [the CEO's] relevant knowledge and involvement are sufficient to support a good faith deposition" even though Duke may "dispute" NTE's statements regarding the CEO's knowledge and connection to the lawsuit.[4] *Id.* (emphasis

---

[4] Recognizing that parties often cannot be exhaustive in their briefing, Judge Bell also declined to limit the scope of the deposition to the topics NTE included in its written response to Duke's motion for protective order. *See Duke Energy*, 2021 WL 5826786, at *3 (holding that the deposition will proceed without limitations beyond those in the Rules and noting that "it would be wrong to require NTE to ask [the CEO] only about the few emails that it referenced in its one page submission" to the court).

10

added).  In other words, because it did not have the burden, NTE's unsupported and disputed summary of the CEO's connection to the lawsuit was enough to justify deposing the highest officer at one of the largest companies in North Carolina.  A similar result was warranted here.

## II.    Good Cause Does Not Exist to Prohibit the Deposition of Mr. Lowe

### A.    Plaintiff No Longer Has a Need to Question Mr. Lowe Regarding His Meetings with President Biden

When seeking a protective order to prevent Mr. Lowe's deposition, Defendant devoted a significant portion of its brief to Plaintiff's stated concerns regarding Mr. Lowe's meetings with President Biden and the timing of the Patent Office's unusual *sua sponte* review of the Patent Trial and Appeal Board's ("PTAB") decision to not institute proceedings regarding the '633 Patent.  (*See* Dkt. 132 at 1-2, 4-7, 10-11.)  Defendant focused on this aspect of the deposition because it provides an attention-grabbing headline and, at least according to Defendant, confirms that Mr. Lowe's deposition was not sought for a proper purpose.[5]  (*See id.*)  The Order similarly focused on Plaintiff's concerns regarding Defendant's contacts with President Biden and the Biden Administration as a basis for seeking the deposition.  (*See* Dkt. 152 at 1-3, 5, 7, 16-18.)  Plaintiff admittedly referenced Mr. Lowe's meetings with President Biden when it initially requested Mr. Lowe's deposition.  (*See id.* at 2-3 (quoting an email

---

[5] To the contrary, Plaintiff only mentioned the meetings with President Biden at the end of its brief and noted that any questions regarding those meetings would occupy "a few minutes of deposition time, after which Purdue [would] move on to the numerous other legitimate deposition topics discussed" in its brief.  (Dkt. 141 at 15.)

11

from counsel for Plaintiff to counsel for Defendant).) And Plaintiff's email was strident in its tone, (*see id.*), which Plaintiff will endeavor to avoid going forward.

However, on July 20, 2023, after the Order was entered, the PTAB issued its Decision After Director Remand in which it considered the merits of the parties' positions and, based on that analysis, denied Defendant's request for *inter partes* review of the '633 Patent. (*See* Decision After Director Remand, attached as Exhibit A.) Stated differently, the PTAB completed its work following the Patent Office's unusual *sua sponte* remand and, in a 36-page written decision on the merits, declined to invalidate the '633 Patent. (*See id.* at 1, 35.) Although the circumstances of the *sua sponte* review remain curious, with the PTAB review concluded in Plaintiff's favor, the concerns regarding Mr. Lowe's meetings with President Biden will no longer be a topic of questioning should the Court permit the deposition to go forward.

B.    Plaintiff's Reasons for Seeking the Deposition of Mr. Lowe Are More Than Sufficient

In its response to Defendant's Motion for Protective Order, Plaintiff offered multiple bases for seeking Mr. Lowe's deposition.

First, Plaintiff argued that Mr. Lowe has knowledge related to its induced infringement claim based on "his extensive personal dealings with Wolfspeed customers and partners." (Dkt. 141 at 6.) Plaintiff cited multiple earnings calls in which Mr. Lowe demonstrated his "knowledge of the means and methods through which Wolfspeed induces its customers and partners to use and sell the [A]ccused [Products]." (*Id.* at 7.) And Plaintiff identified multiple

12

customer meetings during which Mr. Lowe personally cemented the business relationship between the customer and Defendant. (*Id.*)

Second, Plaintiff asserted that Mr. Lowe possesses important knowledge relevant to reasonable royalty damages in this matter. (*See id.* at 7-9.) Mr. Lowe personally led Defendant's 2022 Investor Day conference and, during that conference, provided manufacturing and financial forecasts that do not match Defendant's internal forecasts produced in discovery. (*See id.*) These discrepancies are highly relevant to the proper determination of damages in this case; they also provide a strong basis for impeachment on cross examination. *See generally Duck v. Warren*, 160 F.R.D. 80, 83 (E.D. Va. 1995) (emphasis added) (stating that the existence of known inconsistencies is a "good indication" that other statements, when investigated and tested, "would reveal further inconsistencies" and "[t]he impeachment value at trial of inconsistencies … is unquestionably great").

And third, Plaintiff noted that ███████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████. (Dkt. 141 at 2-3, 9.) The business strategy behind these decisions, including anticipated profitability after the transition, is a proper subject of discovery in this case, and is something about which only Mr. Lowe can testify ███████████████████████████. (*See id.* at 2-3 (quoting Defendant's Rule 30(b)(6) testimony).)

In support of all three of these bases, Plaintiff cited documents and deposition testimony – i.e., evidence – to highlight Mr. Lowe's knowledge and "personal connection to

13

the matters in dispute." *Duke Energy*, 2021 WL 5826786, at *3. Of course, because the burden was Defendant's to bear, Plaintiff did not need to do that much to justify taking the deposition. Its "representations of … relevant knowledge and involvement" should have been "sufficient to support a good faith deposition" of Mr. Lowe. *Id.* By supporting its representations with cites to admissible sworn evidence and documents, Plaintiff did more than enough to counter Defendant's request for a protective order.

C.    The Magistrate Judge Did Not Properly Evaluate Plaintiff's Bases for Seeking the Deposition of Mr. Lowe

Instead of accepting Plaintiff's stated bases for seeking Mr. Lowe's deposition (as the Western District properly did in *Duke Energy*), the Magistrate Judge applied a level of scrutiny unsupported by the law. As to Plaintiff's first basis for the deposition, that Mr. Lowe possesses knowledge relevant to the induced infringement claim, the Magistrate Judge stated that Plaintiff's examples of customer meetings were too "general" and did not identify the customers or state whether those customers sought infringing products, purchased infringing products, or were encouraged by Mr. Lowe to make their purchases. (*See* Dkt. 152 at 12-13.) The Magistrate Judge also commented that "nearly all of the earnings calls" cited by Plaintiff to show Mr. Lowe's knowledge regarding induced infringement "predate Plaintiff's notice letter" regarding the '633 Patent. (*Id.* at 13 (emphasis omitted).)

Of course, the unanswered questions identified by the Magistrate Judge demonstrate exactly why the deposition of Mr. Lowe is needed. They are precisely the types of questions Plaintiff would ask Mr. Lowe if provided the opportunity. Plaintiff should not be penalized for not knowing before Mr. Lowe is deposed what specific testimony he would provide on a

14

customer-by-customer basis.  Furthermore, Plaintiff did specifically identify at least two customers that received personal, face-to-face sales calls from Mr. Lowe.  (*See* Dkt. 141 at 5 (identifying Mr. Lowe's personal meetings with Arrow and General Motors).)  As for the timing of the earnings calls, they were never offered to show actual induced infringement at a particular point in time.  Rather, they were offered to show that Mr. Lowe "has knowledge of the means and methods" through which Defendant induces customers to make purchases.[6] (*Id.* at 7.)  Even still, Plaintiff cited an earnings call that postdated the notice letter and, in that earnings call, Mr. Lowe describes his trip to Detroit to meet with General Motors regarding Defendant's sales agreement with the automobile manufacturer.  (*See id.* at 5.)

　　　　As to Plaintiff's second basis for the deposition, that Mr. Lowe possesses knowledge relevant to reasonable royalty damages, the Magistrate Judge concluded that Plaintiff's statements about Mr. Lowe's knowledge "do not suffice "because they require the inference that, merely because a CEO 'personally' leads a conference or 'personally' narrates a presentation, that individual possesses personal knowledge of all the data comprising that presentation or conference." (Dkt. 152 at 14-15.)  This level of scrutiny is neither warranted nor supported by the law.  As an initial matter, Mr. Lowe need not possess knowledge of "all the data" comprising a presentation or conference for his deposition to be proper.  But more significant, the law does not support such a close and detailed examination of the stated bases for his deposition.  *See Duke Energy*, 2021 WL 5826786, at *3 (holding that representations,

---

[6] The Order ignores that Mr. Lowe's prior sales efforts, even if they predate the notice letter, are relevant to Plaintiff's direct infringement claim.  (*See* Dkt. 83 (alleging, among other things, a claim for direct infringement).)

15

including that an opponent's CEO was "in attendance" during a presentation to the opponent's board of directors, were sufficient to justify the CEO's deposition). If Mr. Lowe is touting information to investors that he has not verified, that itself is discoverable.

D. The Magistrate Judge Did Not Address Mr. Lowe's Decision to Focus Entirely on SiC Power Devices

As noted above, Plaintiff's third basis for seeking Mr. Lowe's deposition was to discuss ███████████████████████████████████████████████ ████████████████████████. As Plaintiff described in its brief in opposition to Defendant's Motion for Protective Order, the business strategy behind Mr. Lowe's decision regarding this change in focus, including Defendants' anticipated profitability after the change in focus, is properly discoverable. (Dkt. 141 at 2-3, 9.) This stated basis for the deposition, which alone would provide ample support for the deposition going forward, is not addressed by the Order at all. (*See* Dkt. 152.) This topic of discovery is particularly pressing because Defendant's Rule 30(b)(6) witness ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████. (Dkt. 141 at 2-3 (quoting Defendant's Rule 30(b)(6) testimony).) Mr. Lowe's work in ████████████████████████ ███████████████████████████████████████ directly undercuts the Magistrate Judge's statements that (1) Mr. Lowe lacks unique knowledge, and (2) any deposition of Mr. Lowe would be cumulative of other discovery. (*See* Dkt. 152 at 10, 15-16.)

Given the importance of Defendant's focus on developing and selling the Accused Products – ████████████████████████████████████████ – Plaintiff

16

should be permitted to take Mr. Lowe's deposition. (*See id.* at 3 (quoting Mr. Lowe as stating in 2018 "Since I joined the company a few months ago, I've been around the world, meeting with customers, partners, and employees. Demand and excitement for our Wolfspeed products remains very strong. Our silicon carbide platform is at the heart of the auto industry's transition to electric vehicles." (cleaned up)).)

*   *   *   *   *

Given that the burden, which is a heavy one under the law, should have been with Defendant, its Motion for Protective Order should have been denied. Plaintiff has more than shown enough to satisfy the applicable standards rightly applied, in line with the analysis set forth in *Duke Energy*.

### III.  <u>Plaintiff Should Not Be Required to Pay Defendant's Reasonable Expenses</u>

When Defendant filed its motion related to Mr. Lowe's deposition, it filed a second Motion for Protective Order related to several third-party subpoenas served by Plaintiff. (Dkt. 129.) The Magistrate Judge denied that motion, finding that Defendant lacked standing to challenge the subpoenas. (Dkt. 151.) The Magistrate Judge declined to shift fees and expenses in connection with this other motion, finding that Defendant, despite its lack of standing, "generally made reasonable arguments about relatively novel issues." (*Id.* at 14-15 n.4.) A similar conclusion as to the reasonableness of Plaintiff's arguments should have been reached here.

During the parties' discussions regarding Mr. Lowe's deposition, and throughout Defendant's briefing, the apex doctrine was the sole basis advanced by Defendant for

17

prohibiting the deposition. (*See, e.g.*, Dkt. 132 at 8-15 (relying on the apex doctrine throughout the argument portion of its brief).) The apex doctrine has never been adopted by the Fourth Circuit and, less than two years ago, the Western District of North Carolina held that a party's unsubstantiated representations regarding the need for a deposition of the CEO of one of the largest companies in the state was sufficient to avoid a protective order. *See Duke Energy*, 2021 WL 5826786, at *3. That Plaintiff decided to contest a doctrine that has never been adopted by the Fourth Circuit does not warrant an award of expenses under Rule 37. This is particularly true in light of Judge Bell's recent decision in *Duke Energy*, which confirms that Plaintiff's position regarding Mr. Lowe's deposition was, at the very least, substantially justified. *See Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (holding that a legal position is "substantially justified" such that expenses should not be awarded "if there is a genuine dispute as to proper resolution or if a reasonable person could think it correct").

In a similar vein, the Order states that Plaintiff could obtain from other witnesses the information it wanted to obtain from Mr. Lowe. (*See, e.g.*, Dkt. 152 at 15-16.) In other words, the Order does not conclude that the information Plaintiff is pursuing is an improper subject for discovery. To the contrary, it suggests that the information is properly sought, and could be obtained from other witnesses.[7] Given that Plaintiff is seeking information that is relevant

---

[7] In multiple other cases, including cases cited in the Order, the deposing party was instructed to seek the desired information elsewhere first, but told it could depose the executive later if it was dissatisfied with the information obtained from other witnesses. *See, e.g.*, *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Baine*, 141 F.R.D. at 335-36.

18

to the case, it should not be punished for seeking that information from Defendant's CEO when the only objection was based on a doctrine not recognized in this Circuit.

For these reasons, the Magistrate Judge's award of expenses incurred in resisting Mr. Lowe's deposition was contrary to law and should be set aside.

## Conclusion

For the foregoing reasons, Plaintiff objects to the portions of the Order related to the deposition of Gregg Lowe, including the requirement that Plaintiff pay Defendant's reasonable expenses. Plaintiff therefore respectfully asks that the Order be set aside.

This the 27th day of July, 2023.

**/s/ Michael W. Shore**
Michael W. Shore
Texas Bar No. 18294915
Chijioke E. Offor
Texas Bar No. 24065840
Halima Shukri Ndai
Texas Bar No. 24105486
THE SHORE FIRM LLP
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: 214-593-9110
Fax: 214-593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

19

John P. Lahad
Texas Bar No. 24068095
Brian D. Melton
Texas Bar No. 24010620
Abbey E. McNaughton
Texas Bar No. 24116751
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 653-7859
Facsimile: (713) 654-6666
jlahad@susmangodfrey.com
bmelton@susmangodfrey.com
amcnaughton@susmangodfrey.com


**/s/ L. Cooper Harrell**
Allison Mullins
N.C. State Bar No. 23430
L. Cooper Harrell
N.C. State Bar No. 27875
TURNING POINT LITIGATION
MULLINS DUNCAN HARRELL &
RUSSELL PLLC
300 North Greene Street, Suite 2000
Greensboro, NC 27401
Telephone: 336-645-3320
Facsimile: 336-645-3330
amullins@turningpointlit.com
charrell@turningpointlit.com

*COUNSEL FOR PLAINTIFF*
*THE TRUSTEES OF PURDUE*
*UNIVERSITY*

20

## CERTIFICATE OF WORD COUNT

In accordance with Local Rules 7.3(d) and 72.4, the undersigned hereby certifies that the foregoing document contains less than 6,250 words in the body, headings, and footnotes according to Microsoft Word's word count feature.

This the 27th day of July, 2023.

**/s/ L. Cooper Harrell**
L. Cooper Harrell

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document has been filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this action.

This the 27th day of July, 2023.

<u>/s/ **L. Cooper Harrell**</u>
L. Cooper Harrell

Case 1:21-cv-00840-WO-LPA   Document 154   Filed 07/27/23   Page 22 of 22