IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
THE TRUSTEES OF PURDUE        )
UNIVERSITY,                   )
                              )
        Plaintiff,            )
                              )
   v.                         )       1:21-cv-840
                              )
WOLFSPEED, INC.,              )
                              )
        Defendant.            )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is a Motion for Reconsideration of the Court's Claim Construction Order filed by Defendant Wolfspeed, Inc. (Doc. 176.) For the reasons stated herein, the motion is denied.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For an overview of the '633 Patent at issue in this case, see the court's Claim Construction Memorandum Opinion and Order. (Doc. 163 at 10–12.)[1]

The parties submitted opening claim construction briefs, (Doc. 103 (Plaintiff); Doc. 104 (Defendant)), as well as

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

responsive briefs, (Doc. 117 (Plaintiff)); Doc. 118 (Defendant)). This court held a claim construction hearing on May 5, 2023, and published a Claim Construction Memorandum Opinion and Order on August 7, 2023. (Doc. 163.)

On September 22, 2023, Defendant filed a motion for reconsideration of that Order and a memorandum in support, (Docs. 176, 177), Plaintiff responded, (Doc. 183), and Defendant replied, (Doc. 184). The motion is now ripe for review.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) allows for any interlocutory order to "be revised at any time before the entry of judgment." There are only three circumstances where a court may revise an interlocutory order under Rule 54(b): "(1) 'a subsequent trial produc[ing] substantially different evidence;' (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (alteration in original) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)).

"However, when assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e)." Mobley v. Greensboro City Police Dep't, No. 1:17-cv-114, 2018 WL 6110997, at *2 (M.D.N.C. Nov. 21, 2018); accord Carlson, 856 F.3d at 325

- 2 -

("Compared to motions to reconsider <u>final</u> judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise <u>interlocutory</u> orders before final judgment as the litigation develops and new facts or arguments come to light.").

"Despite this flexible approach[,] . . . the discretion Rule 54(b) provides is not limitless." <u>Carlson</u>, 856 F.3d at 325. Indeed, "such discretion is 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" <u>U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC</u>, 899 F.3d 236, 257 (4th Cir. 2018) (quoting <u>Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coppers & Lybrand, LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003)). Motions for reconsideration[2] "may not be used . . . to

---

[2] Although the Fourth Circuit has not specifically articulated the standard for evaluating a motion for reconsideration under Rule 54(b), see <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514–15 (4th Cir. 2003), district courts in the Fourth Circuit routinely look to the standards governing the reconsideration of final judgments under Rule 59(e) for guidance in considering a motion for reconsideration of an interlocutory order under Rule 54(b). See <u>Dhruva v. CuriosityStream Inc.</u>, No. SAG-23-2265, 2024 WL 712467, at *2 (D. Md. Feb. 21, 2024); <u>Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc.</u>, No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011); <u>Hinton v. Henderson</u>, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011); <u>Directv, Inc. v. Hart</u>, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004).

raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) ("A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence.").

### III. **ANALYSIS**

Defendant asks the court to reconsider its construction of the claim terms "a first source electrode formed over the first source region" and "a second source electrode formed over the second source region" in claim 9 of the '633 Patent. (See Def.'s Mot. for Recons. of the Court's Claim Construction Order (Dkt. 163) ("Def.'s Mot. for Recons.") (Doc. 176) at 1.) In its Order, the court determined that no construction of these terms was necessary. (See id.; Claim Construction Mem. Op. and Order (Doc. 163) at 14-21.)

Defendant contends the court "committed clear error in three respects." (Def.'s Mem. in Supp. of Its Mot. for Recons.

of the Court's Claim Construction Order (Dkt. 163) ("Def.'s Br.") (Doc. 177) at 5.) First, "the Court declined to rely on the prosecution history as evidence of the proper construction because it determined that Purdue's amendments did not reflect a clear and unmistakable disclaimer." (Id.) Second, the court "fail[ed] to construe the terms 'first' and 'second' consistent with their plain and ordinary meaning." (Id.) Third, "the Court found that the 'specification explicitly considers and chooses to include embodiments where a single electrode is used for both the "first" and "second" source regions.' . . . But that still leaves a question as to the meaning of the terms 'first source electrode' and 'second source electrode.'" (Id. at 7 (quoting Claim Construction Mem. Op. and Order (Doc. 163) at 19).)

The claim terms "a first source electrode formed over the first source region" and "a second source electrode formed over the second source region" "do not stand alone." Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005). "Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.' Id. (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 978, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the

claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"In addition to consulting the specification, . . . a court 'should also consider the patent's prosecution history, if it is in evidence.'" Id. at 1317 (quoting Markman, 52 F.3d at 980). "Yet because the prosecution history represents an ongoing negotiation between the [Patent and Trademark Office ("PTO")] and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

In rendering its Claim Construction Memorandum Opinion and Order, the court considered both the specification and the prosecution history of the '633 Patent. (See Claim Construction Mem. Op. and Order (Doc. 163) at 18-21.) The specification explicitly contemplated an embodiment in which there was a unitary source electrode. (Id. at 19.) Though it appears from the prosecution history that the words "first" and "second" may have been added to Claim 9 to overcome prior art references identified by the PTO, it is not clear from the prosecution history what was intended by these additions and, as the court determined, these additions did not rise to the level of clear

and unmistakable disclaimer. (See id. at 19-21.) Accordingly, it would have been inappropriate for the court to narrow the scope of the claim based solely on unclear prosecution history and exclude an embodiment specifically described in the '633 Patent's specification.

Further, Claim 9 purports to cover "a first source electrode" and "a second source electrode," language which on its face does not explicitly require those first and second source electrodes to be distinct[3] from each other. Because of the specification's description of an embodiment with a unitary source electrode covering both source regions, which can be achieved based on the claim's terms, the court did not commit clear error in determining that no construction was necessary for Claim 9.

## IV. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration of the Court's Claim Construction Order (Dkt. 163), (Doc. 176), is **DENIED.**

---

[3] The court acknowledges that its use of the words "distinct" and "disconnected" interchangeably in the Claim Construction Memorandum Opinion and Order may have been inartful, but nevertheless, the court would have reached the same result considering only electrodes that are distinct, but still physically connected in some way.

This the 19th day of March, 2024.

```
                        _____
                              United States District Judge
```